## STATE ex DANA, Plaintiff-Appellant, v. GERBER, Defendant-Appellee.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20333.    Decided October 14, 1946.

Krewson & Williams, for Plaintiff-Appellant.
'`Frank T. Cullitan, Prosecutor, Saul S. Danaceau, Assistant, Cleveland, for Defendant-Appellee.

## OPINION

By HURD, J.

This is an appeal on questions of law from the court of common pleas. A petition in mandamus was filed on behalf of Susan Dana, widow of one Oscar Dana, directed against the Coroner of Cuyahoga County. The prayer of the. petition was for an order of the court to direct the coroner to change his verdict from "suicide" to. "accidental death" under and by virtue of the provisions of §2855-16 GC effective October 12, 1945.

The coroner filed an answer to the petition containing certain admissions and denials and an allegation that the facts stated in the petition did not state a cause of action to which the relator filed a reply traversing certain of the allegations of new matter contained in the coroner's answer.

The case was assigned for trial but before the introduction of testimony an oral motion was made by respondent to dismiss the petition, which was granted by the court.

There are two assignments of error. (1) that the court erred in dismissing the petition on the ground that it did not contain facts sufficient to constitute a cause of action; (2), in holding that mandamus was not a proper remedy.

The motion granted by the court being in the nature of an oral demurrer, the facts well pleaded in the petition must be admitted to be true for the purpose of the ruling, and it is therefore necessary to set forth the pertinent allegations of the petition which are briefly summarized as follows:

The deceased husband of appellant was admitted to University Hospital, Hanna House, Cleveland, Ohio, on or about Nov. 8, 1945, where he underwent surgical treatment. Thereafter he was placed in a room on the fourth floor of the hospital; during the period between the 8th and 11th of November, 1945, and until shortly before his death, he was given several dosages of phenobarbital as part of the essential medical treatment prescribed for him. It is alleged: that the gradual cumulative effect of the administration of said phenobarbital, coupled with post-operative shock, was such as to cause his physical and mental processes to become impaired so that about the hour of 1:40 P. M. on Nov. 11, 1945, the decedent was not responsible for his conduct; that at about the same time on the same day, the body of the decedent was discovered on the ground outside the hospital building and that the exact manner and means by which the body of decedent came to that place are unknown; that the coroner on the same day made a finding that the immediate cause of death was:

"multiple fractured ribs, internal injuries, suicide, jump from window."

but that the relator believes and avers that when the coroner made this decision he was not in possession of all the facts and information relating to the death of decedent, especially such as relate to the influence of the administration of phenobarbital as a sedative and that the coroner would and should have rendered a different decision as to the cause of death and the manner and mode in which the death occurred had he been in possession of all the facts relating thereto; that the coroner incorporated in his verdict and in the death certificate filed with the registrar of vital statistics of Cleveland, his decision hereinbefore set forth and that the decision is in part erroneous in that it recites that the deceased committed "suicide" and that he "jumped" from a window; that the acts and conduct of decedent were wholly involuntary, due primarily to post-operative shock and the administration of phenobarbital, by reason whereof

his physical and mental processes were impaired to the extent that he was incapable of forming an intention to take his life and that the verdict of the coroner should have been that decedent came to his death by "accidental" means.

The first assignment of error, namely, that the court dismissed the petition on the ground that the facts stated were not sufficient to constitute a cause of action, calls into question the validity of §2855-16 GC, which is a new section providing for and defining in part the jurisdiction of the coroner. Prior to the adoption of this new section of the General Code, the duties of the coroner were defined by §2856 GC et seq., which in effect limited the jurisdiction of the coroner to inquests and proceedings, in which, in the language of the statute, "death is supposed to have been caused by unlawful or suspicious means." When such cases came to the attention of the coroner it was his duty, again in the language of the statute, "to appear at the place where the body is, issue subpoenas for such witnesses as he deems necessary * * * and proceed to inquire how deceased came to his death, whether by violence from any other person or persons, either as principal or accessory before or after the fact, and all circumstances relating thereto." Under this section it was considered that the jurisdiction of the coroner was confined to cases where there was a "suspicion of death" by criminal means. Sec. 2856 GC and certain succeeding sections were repealed at the last regular session of the legislature and new §§2855-3 to 2855-18 GC were adopted and only original §2856-3 GC relating to the qualifications of the coroner was retained.

An examination of the new sections of the Code defining the rights, duties and obligations of the coroner discloses that the jurisdiction and authority of the coroner, heretofore confined to cases involving crimes, is, for the first time in the history of Ohio, enlarged to cover cases involving civil liability. For instance, §2855-5 GC provides for cases where "any person shall die as result of criminal or other violent means or by casualty or by suicide" and §2855-7 GC contains the words "whether by violence to self or from any other person or persons."

Sec. 2855-16 GC provides:

"The cause of death, the manner and mode in which the death occurred, as delivered by the coroner and incor-

porated in the coroner's verdict and incorporated in the death certificate, filed with the registrar of vital statistics, shall be the legally accepted manner and mode in which the death occurred and the legally accepted cause of death, unless the court of common pleas of the county in which the death, occurred, after hearing, directs the coroner to change his decision as to the cause, mode and manner of death."

From the plain language of this section we conclude that the legislature intended to enlarge the jurisdiction of the coroner to cases of death where civil rights and liabilities may be involved.

It is not the purpose of this court to question the wisdom of the legislature in so enlarging the jurisdiction of the coroner. It has been well said that:

"There are frequent expressions to the effect that courts may not determine the wisdom of the law under consideration. The wisdom or want of wisdom of a statute is a question not for the courts, but solely for the legislature, which body is presumed to have acted wisely in the enactment of the statute. It is the duty of the courts to interpret the law as they find it, without reference to whether the provisions are wise or unwise, politic or impolitic."

37 O. Jur. Sec. 355. Subject: Statutes, at page 650-651, and numerous cases cited thereunder in support of the text as early as Wayne Township v. Green Township, Wright, 292, (June, 1833) and as late as State ex rel Downing v Power, 125 Oh St 108 (March 30, 1932).

It is urged by the prosecuting attorney representing the county coroner that the language providing for a hearing by the court of common pleas, found in §2855-16 GC is so incomplete, so vague, indefinite and uncertain that it is impossible to determine any valid rule of construction with any reasonable degree of certainty what the legislature intended. It is argued further that inasmuch as there is no other provision of law, statutory or otherwise, to supplement or render complete the said provision, the deficiency is such as to render it impossible of execution and for this reason the particular section must be held inoperative and void.

The county prosecutor in support of his argument cites Sec. 62, 25 Ruling Case Law, under the subject, "Statutes" as follows:

"Where an act of the legislature is so vague, indefinite and uncertain that the courts are unable to determine with

any degree of certainty what the legislature intended, or is so incomplete or is so conflicting and inconsistent in its provisions that it cannot be executed, it will be declared to be inoperative and void. * * *."

See also, **37 O. Jur. Sec. 509 at page 829** as follows:

"Legislative enactments may be declared by the courts to be inoperative and void for uncertainty in the meaning thereof. This power may be exercised if the state is so incomplete and so vague and indefinite that the court is unable to determine with any degree of certainty what the legislature intended."

and numerous cases cited thereunder.

However, it is also the law of this State,

"that questions relating to the validity of a law based on its indefiniteness and uncertainty should be approached with cautious circumspection. The basis of the principle that courts will not, in doubtful cases, pronounce a legislative act to be contrary to the Constitution, applies with equal force where the courts are called upon to declare a statute to be so meaningless and unintelligible as to be inoperative."

**37 O. Jur.** etc "Statutes" **Sec. 510, pages 829-830,** and cases thereunder cited.

It is clear that the legislature by enacting §2855-16 GC intended to clothe the court of common pleas with jurisdiction to hear evidence and after such hearing direct the coroner to change his decision as to the cause, mode and manner of death, if in the judgment of the court the coroner's verdict is not justified by the evidence. But the serious question remains as to how or in what manner the intent of the legislature is to be effectuated under the statute as written. It will be noted from an analysis of this particular section and the other new sections of the General Code (See **Sec. 2855-3, Sec. 2855-18 GC**) that there is no method prescribed as to the manner in which the decision of the coroner shall be brought before the common pleas court. There are no provisions describing the person or persons, or class of persons, who shall be made parties or who may become parties to such action and the section is wholly silent as to how parties whose rights or liabilities may be affected shall be

brought before the court for adjudication. Nor does there appear to be any other provision of law conferring jurisdiction upon the court of common pleas to decide such questions either in original or review proceedings and no other statutory provision setting forth the nature of such proceeding.

There is another important question in this case and that is whether or not there is a grant of judicial power to the coroner, a ministerial officer, to make a finding in an ex parte proceeding affecting constitutional rights in civil matters, for while we are not concerned with the wisdom or policy of the legislature, we must be concerned with the constitutional rights of any person who may be prejudiced by an ex parte finding of a ministerial officer in a proceeding in which they are not made parties and in which they are not afforded means of becoming parties for the purpose of asserting their rights.

So far as we are aware, the question of the validity of §2855-16 GC has never before been raised.

Counsel have cited two cases which while not directly in point are claimed to be analagous. The first is Muenier's case, decided by the supreme judicial court of Massachusetts, April 9, 1946, 66 N. E. Rep. (2d) 198 et seq., and the second is Spiegel's House Furnishing Co. v. Industrial Commission, 288 Illinois, 422, 123 N. E. Rep. 606, decided by the supreme court of Illinois, June 18, 1919.

Muenier's case was heard on appeal from the superior court wherein proceedings were had under the Workmen's Compensation Act on a claim for disability arising from injury to the lungs in the course of employment. The insurer appealed from a decree awarding compensation. The court had under consideration a statute governing the admissibility and probative effect to be given to the reports of medical referees in Workmen's Compensation cases. The statute, so far as material, provided for the appointment of a board of medical referees consisting of three impartial physicians. The referees, by the terms of the statute, were directed to examine the employee, if living, and examine the body of the employee, if dead, and after study and consideration report to the department of Workmen's Compensation. It was further provided that the report of the referees shall be **"binding"** on the parties and be included in the decision of the single member and of the reviewing board. The contro-

versy hinged on the meaning to be given the word "binding" the court using the following language:

"The word 'bind' or 'binding' appearing in our statutes has been construed to be conclusive." (See Vol. 66, N. E. Rep. page 200, supra).

The Massachusetts court concluded that the legislature by the statute attempted to make the report of the referees a final determination of fact. The court called attention to the proposition that no provision was made for the representation of either party at any investigation conducted by the Board and that the party who was adversely affected by the report could not explain, contradict or refute it and that he was therefore denied a fair opportunity to introduce all available material evidence in support of or against the claim and to have it considered and weighed by the trier of facts. The court decided that the statute giving that effect to the report of an ex parte investigation deprived a party of his fundamental rights and was violative of Arts. I, X and XII of the Declaration of Rights of the Constitution of Massachusetts and was contrary to the Due Process clause of the 14th Amendment to the Constitution of the United States, citing numerous cases in support of its conclusion.

The analogy between this and the instant case is obvious. The words used in the Ohio statute to the effect that the finding of the coroner "shall be the legally accepted cause of death" if binding and conclusive, would mean an adjudication of substantive rights without the right of any party adversely affected thereby to appear, to be represented, to offer evidence in support of or against a claim, and to have it weighed by the trier of the facts.

It would also appear that the term **"legally accepted"** in the instant case has a connotation at least equal to the word "binding" in the Muenier case. We think §2855-16 **GC** attempts to make the finding of the coroner a final determination of fact to be "legally accepted."

In the case of Spiegel's House Furnishing Co. v. Industrial Commission, 288 Ill. 422, supra, Mr. Justice Duncan, delivering the opinion of the court said: (at page 608)

"Plaintiff in error was not a party to the proceedings before the coroner's jury, was not present and had no right to be present or represented in that proceeding, had no choice or right of choice in the selection of the jury, did not

cross-examine and had no right to cross-examine the witnesses before that jury, or to contradict the evidence tending to prove the liability against it, which it is claimed the verdict of that jury now establishes. To hold that that verdict has that effect is to condemn plaintiff in error without a hearing and to violate the most elementary and sacred rules for the administration of justice between private individuals guaranteed by our laws and our Constitutions, both state and national. * * *"

And at page 610:

"The allowance of coroner's verdict as evidence in civil suits is wrong in principle and necessarily results in much injustice to litigants. A coroner, under our law, **has no judicial power. Such power is vested by the Constitution in the courts thereby created. Peoria Cordage Co. v. Industrial Board, supra** (284 Ill 90) (emphasis ours). At common law, the office of coroner was judicial in its nature. But if he were a judicial officer invested with judicial powers and duties, we are unwilling to further indorse the holding that any litigant should be bound by the verdict of the coroner's jury in whose inquest he had no right to participate and did not do so. The most solemn finding or judgment of a court is not admissible against a litigant, either as res adjudicata or as an estoppel by verdict, unless he was a party to that judgment. Chicago Title & Trust Co. v. Storage Co., 260 Ill., 285, 103 N. E. 227. The rule has always been recognized that no person shall be affected by any judicial investigation to which he is not a party, unless his relation to some of the parties was such as to make him responsible for the final result of the litigation. 1 Freeman on Judgments, §154."

This decision by the supreme court of Illinois is cogent, particularly so because the Illinois statutes are comparable in content and scope to our Ohio Statutes concerning the authority and jurisdiction of the coroner (see Smith Hurd Illinois Annot. Statutes, Chap. 31, Statutes.) and because the provisions in the constitutions of Ohio and Illinois vesting judicial power in the courts are similar. To the same effect it has been held in Ohio that the finding of an inquest is inadmissible as evidence against the accused on his trial. State v. Turner, Wright 20. And that the record of the testimony taken by the coroner likewise is not admissible in a civil case. **Mutual Life Ins. Co. v Schmitt, 40 Oh St. 112.**

In the case of State v Harmon, 31 Oh St 251, Minshall, J. speaking for the court said:

"What is judicial power cannot be brought within the ring fence of a definition. It is undoubtedly power to hear and determine; but this is not peculiar to the judicial office. Many of the acts of administrative and executive officers involve the exercise of the same power. Boards for the equalization of taxes, of public works, of county commissions, township trustees, judges of election, viewers of roads, all, in one form or another, hear and determine questions in the exercise of their functions, more or less directly affecting private as well as public rights. **It may be safely conceded that power to hear and determine rights of property and of person between private parties is judicial and can only be conferred on the courts.**" (emphasis ours)

See also: **Cincinnati, Wilmington & Zanesville Railroad Co. v Clinton County, 1 Oh St 77. State ex rel Monnett v Gilbert, 56 Oh St 575.**

These authorities are important in considering the question of the validity of the statute in the instant case and in considering whether or not the legislature by the provisions of the statute has attempted to clothe the coroner, a ministerial officer, with full judicial power. It is certain that the record made by the coroner cannot be reviewed as upon error proceedings because the testimony adduced before the coroner is not admissible in the absence of some statutory provision making it so. There is no such provision for review in the new section or in other sections of the General Code. It is also clear that by this section, the court of common pleas is not authorized to do more than to direct the coroner to change his finding. If such a direction is given it would still be according to the wording of the statute, a finding of record by the coroner, although made by the direction of the court of common pleas. It is also clear that if after hearing the court does not direct the coroner to change his finding, the finding of the coroner is intended to have the force of a judicial decision because it shall be the "legally accepted cause of death."

In the case of **State of Ohio ex rel Gilbert, Auditor etc., 56 Oh St 575,** it was held that the original act of 1896, entitled "An Act to provide for the registration of land titles in

Ohio" was unconstitutional and among other things the court found as follows:

"Said act is repugnant to **Sec. 1 of Article IV of the Constitution** because it attempts to confer judicial power upon the county recorder."

(syllabus 3)

The county recorder was held to be a ministerial officer who could not exercise judicial power. It was not until the Constitution was amended providing for due process through the courts that a Torrens Act was adopted which survived the test of constitutionality.

We conclude from a consideration of the authorities and an analysis of the statute that §2855-16 GC is an attempt by the legislature to vest the coroner with judicial power in civil matters between private parties which is repugnant to **Section 1 of Article IV** of the **Ohio Constitution** vesting full judicial power in the court.

We also conclude that by this section the legislature has attempted to authorize the coroner to make "legally accepted findings" having the power of judicial decisions affecting civil rights in ex parte proceedings, without making adequate provisions or defining means for persons adversely affected thereby to be made parties or become parties for the purpose of asserting and protecting their rights.

We conclude further that the legislature by this section attempted to vest the court of common pleas with power to direct the coroner to change his finding in a civil matter so that it will thereafter have the force of a judicial decision without providing the method or means by which such jurisdiction shall be exercised and without providing some mode or method which will guarantee the parties their constitutional rights to have their day in court and that it is therefore inoperative and void for uncertainty and indefiniteness.

Finally, we find that the statute deprives a party of his fundamental rights and is violative of **Article 1, Sections 1 and 16** of the **Bill of Rights** of the **Ohio Constitution** and **Article IV, Section 1** of the **Ohio Constitution** and is contrary to the Due Process clause of the 14th Amendment to the Constitution of the United States.

In view of these holdings in respect of the first assignment of error it is unnecessary to consider the second assignment of error as to whether or not mandamus is a proper remedy.

For the reasons stated the judgment of the court of common pleas is affirmed.

SKEEL, PJ, concurs.
MORGAN, J, concurs.