THE STATE OF OHIO, APPELLANT, *v.* STAMBAUGH, APPELLEE.

[Cite as State *v.* Stambaugh (1987), 34 Ohio St. 3d 34.]

(No. 86-2068—Decided December 16, 1987.)

*Sheilah H. McAdams* and *Kathryn A. Reckley,* for appellant.

*Engwert & Loyd, Christopher C. Loyd* and *Donna M. Engwert,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Barbara A. Serve,* urging reversal for *amicus curiae* state of Ohio.

WRIGHT, J. Section 1, Article IV of the Ohio Constitution provides:

"The judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the supreme court as may from time to time be established by law."

Statutes which have attempted to vest bodies with judicial powers other than those bodies provided for in the Constitution have been ruled unconstitutional by this court. See, *e.g., State, ex rel. Johnston,* v. *Taulbee* (1981), 66 Ohio St. 2d 417, 20 O.O. 3d 361, 423 N.E. 2d 80; *State, ex rel. Shafer,* v. *Otter* (1922), 106 Ohio St. 415, 1 Ohio Law Abs. 103, 140 N.E. 399; *State, ex rel. Dana,* v. *Gerber*

(1910), 79 Ohio App. 1, 46 Ohio Law Abs. 418, 34 O.O. 48, 70 N.E. 2d 111.

The court of appeals below found R.C. 4509.101 confers appellate powers upon the Registrar of Motor Vehicles and thus held the entire statute unconstitutional.[1]

In *South Euclid* v. *Jemison* (1986), 28 Ohio St. 3d 157, 28 OBR 250, 503 N.E. 2d 136, which was decided by this court nearly two months after the court of appeals' decision in this cause, we found that sections (B)(3)(a) and (D) of R.C. 4509.101 were unconstitutional under the doctrine of separation of powers. Pursuant to R.C. 1.50 and *Geiger* v. *Geiger* (1927), 117 Ohio St. 451, 466, 5 Ohio Law Abs. 829, 160 N.E. 28, 33, we held that these sections were severable from the rest of the statute. The question presented in this appeal, therefore, is whether R.C. 4509.101(B)(1) and (B)(2)(b) are unconstitutional.

The appellate court held that these sections, when read in conjunction with R.C. 4509.101(B)(3)(a), are un-

constitutional because their cumulative effect is to give the registrar authority to review judicial determinations.

We must start with the premise that "* * * all legislative enactments enjoy a presumption of constitutionality." *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 61, 4 OBR 150, 151, 446 N.E. 2d 449, 450, citing *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375, 377, 15 O.O. 3d 450, 451, 402 N.E. 2d 519, 521; *State, ex rel. Taft,* v. *Campanella* (1977), 50 Ohio St. 2d 242, 246, 4 O.O. 3d 423, 425, 364 N.E. 2d 21, 24; *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E. 2d 59, paragraph one of the syllabus. We repeat that doubts regarding the validity of a statute are to be resolved in favor of the statute. *State, ex rel. Taft,* v. *Campanella, supra.* As we said in *Dorso, supra,* at 61, 4 OBR at 151, 446 N.E. 2d at 450, "* * * we are obligated to indulge every reasonable interpretation favoring the ordinance in order to sustain it."

---

[1] The court of appeals' opinion was journalized two months before our decision in *South Euclid* v. *Jemison* (1986), 28 Ohio St. 3d 157, 28 OBR 250, 503 N.E. 2d 136, where we held that sections (B)(3)(a) and (D) of R.C. 4509.101 were unconstitutional and that these sections were severable from the rest of the statute.

Although the appellate court below held that R.C. 4509.101 was unconstitutional *in toto,* such a holding is contrary to our decision in *South Euclid* and the principles of severability as set forth in R.C. 1.50 and *Geiger* v. *Geiger* (1927), 117 Ohio St. 451, 466, 5 Ohio Law Abs. 829, 160 N.E. 28, 33. Similarly, the appellate court below should have severed any unconstitutional statutory provisions in the instant case instead of finding the entire statute unconstitutional.

Because the appellate court did not specifically address the constitutionality of any sections other than (B)(1), (B)(2)(b),

(B)(3)(a), and (D), we shall address the constitutionality of only these sections as well. We reserve constitutional analysis of other R.C. 4509.101 sections until such provisions are challenged and are before this court pursuant to an actual controversy. As Justice Douglas states in dissent:

" 'It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect. It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies. The extension of this principle includes enactments of the General Assembly * * *.' *Fortner* v. *Thomas* (1970), 22 Ohio St. 2d 13, 14, 51 O.O. 2d 35, 257 N.E. 2d 371, 372."

Applying the rules of construction enunciated above to R.C. 4509.101, and after a careful reading of the statute, we conclude that R.C. 4509.101(B)(1) and (B)(2)(b) are constitutional and valid, for the reasons stated *infra.*

The purpose of the financial responsibility law, as indicated in R.C. 4509.101(K), is *to minimize situations in which financial inability prevents compensation to victims who have sustained damages in motor vehicle accidents.* Division (A) of the statute defines the requirement of financial responsibility, the civil penalties to which violators are subject, and the persons who are subject to the statute.

To implement the law, R.C. 4509.101(B)(1) requires defendants appearing in court on an alleged violation specified in Traf. R. 13(B) to verify proof of financial responsibility covering the vehicle operated at the time of the offense. Traf. R. 13(B) includes the offense of driving without being licensed to drive and other serious traffic offenses.[2]

The legislative procedure for obtaining the required verification is a complex process. Defendants who are convicted of a Traf. R. 13(B) offense are required to prove financial responsibility to the court at sentencing pursuant to R.C. 4509.101(B)(1). Failure to prove financial responsibility will result in the court's ordering the license of the defendant suspended and imposing other penalties contained in R.C. 4509.101(B)(1)(a) through (d). The only appeal mentioned in this section is at R.C. 4509.101(B)(1)(d), which states:

"An appeal under this section does not operate to stay any suspension unless the court orders the stay for good cause shown and the defendant establishes to the satisfaction of the court that his operation of a motor vehicle will be covered by proof of financial responsibility during the pendency of the appeal."

The court of appeals erred when it found that this section was unconstitutional in that it gave an administrative officer authority to review a court's

---

[2] The text of Traf. R. 13 reads in part:

"(A) Establishment and operation of traffic violations bureau.

"A traffic violations bureau must be established by all courts other than juvenile courts. The court shall appoint its clerk as violations clerk. If there is no clerk, the court shall appoint any appropriate person of the municipality or county in which the court sits. The violations bureau and violations clerk shall be under the direction and control of the court. Fines and costs shall be paid to, received by and accounted for by the violations clerk.

"The violations bureau shall accept appearance, waiver of trial, plea of guilty and payment of fine and costs for offenses within its authority.

"(B) Authority of violations bureau.

"All traffic offenses except those listed in subsections (1) through (9) of the subdivision may be disposed of by a traffic viola-

tions bureau. The following traffic offenses shall not be processed by a traffic violations bureau:

"(1) Indictable offenses;

"(2) Operating a motor vehicle while under the influence of alcohol or any drug of abuse;

"(3) Leaving the scene of an accident;

"(4) Driving while under suspension or revocation of driver's license;

"(5) Driving without being licensed to drive;

"(6) A second moving traffic offense within a twelve-month period;

"(7) Failure to stop and remain standing upon meeting or overtaking a school bus stopped on the highway for the purpose of receiving or discharging a school child;

"(8) Willfully eluding or fleeing a police officer;

"(9) Drag racing."

determination. Such a holding is not tenable. The "appeal" mentioned in this section refers to an appeal from a lower court to a higher court — not an appeal from a lower court to an administrative officer.

Unlike the unconstitutional sections (B)(3)(a) and (D), which deal with the hybrid role of the courts and the registrar, section (B)(1) deals exclusively with the role of courts in enforcing R.C. 4509.101.

In *South Euclid, supra,* it was argued by the appellant therein that the absence of the word "appeal" in sections (B)(3)(a) and (D) was significant in that it indicated that the General Assembly did not confer appellate review of court-ordered suspensions to the registrar. We found, however, that this assertion lacked merit because a careful reading of the provisions revealed otherwise. Similarly, in this case, a careful reading of section (B)(1)(d), keeping in mind its context, indicates that "appeal" refers to review by a higher court, not an administrative officer.

One of the other statutory provisions considered by the appellate court, R.C. 4509.101(B)(2)(a), indicates that a driver shall, within five days after the date of issuance of any order of impoundment under section (B)(1), surrender his certificate of registration, registration plates, or license to the court. If the defendant is not convicted of a Traf. R. 13(B) offense, he is still required to verify his financial responsibility. R.C. 4509.101(B)(2)(b) provides that the clerk of courts shall identify the drivers or owners in this group to the registrar. The clerk is required to report the names of defendants not in compliance with the court's order, defendants found not guilty who could not verify proof of financial responsibility to the court, defendants who failed to appear or forfeited bond, and nondefendant owners of motor vehicles whose vehicle was driven by a defendant.

In *South Euclid, supra,* we specifically found that R.C. 4509.101(B)(2)(b) was constitutional. "We believe that in its present form, R.C. 4509.101(B)(2)(b) merely establishes a cooperative venture between the clerk of courts and the Registrar of Motor Vehicles, and not an agency or *de facto* agency relationship [between the courts and the registrar]." *Id.* at 164, 28 OBR at 256, 503 N.E. 2d at 142.

It is evident, therefore, the Bureau of Motor Vehicles is not empowered with appellate review under R.C. 4509.101(B)(2)(b).

Although the language of the statute is hardly a model of clarity, this is not grounds to strike down the statute. Furthermore, it is not the task of this court to determine the wisdom of a particular legislative pronouncement. The only issue before us is whether the statute is in direct conflict with the Ohio Constitution, and as indicated, we find that it is not.

The judgment of the court of appeals is affirmed in part and reversed in part and this cause is remanded to the trial court for further proceedings in accordance with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES and H. BROWN, JJ., concur.

DOUGLAS, J., concurs in part and dissents in part.

DOUGLAS, J., concurring in part and dissenting in part. I am compelled to write separately to express some concerns I have with the analysis contained in the majority opinion. I find

that opinion to be confusing in certain respects and utterly wrong in others.

## I

Before addressing specific sections of R.C. 4509.101, I think it is important to recognize a critical shortcoming in appellee's challenge to the constitutionality of those sections which he seeks to overturn. *Appellee lacks the necessary standing* for such a challenge. The majority does not deal with this issue although, in passing, appellant's brief to this court touches on the question.

"A person has no standing to attack the constitutionality of an * * * [enactment] unless he has a direct interest in the * * * [enactment] of such a nature that his rights will be adversely affected by its enforcement." *Anderson* v. *Brown* (1968), 13 Ohio St. 2d 53, 42 O.O. 2d 100, 233 N.E. 2d 584, paragraph one of the syllabus. See, also, *Witham* v. *South Side Bldg. & Loan Assn. of Lima* (1938), 133 Ohio St. 560, 562, 11 O.O. 269, 270, 15 N.E. 2d 149, 150; *State, ex rel. Lynch,* v. *Rhodes* (1964), 176 Ohio St. 251, 254, 27 O.O. 2d 155, 156, 199 N.E. 2d 393, 396; *Niles* v. *Dean* (1971), 25 Ohio St. 2d 284, 288, 54 O.O. 2d 392, 395, 268 N.E. 2d 275, 278. Appellee herein has no such interest.

This appeal stems from the trial court's disposition of appellee's motion for relief from judgment, post-conviction relief or, in the alternative, for stay of imposition of sentence. In his memorandum in support of this motion, appellee attacked those provisions in R.C. 4509.101 that require the court to report its order to the registrar. Appellee attacked this provision on the basis that the court is thereby improperly made a *de facto* agent of the bureau. Appellee also questioned the provision which purportedly allows the *registrar* to review orders of a trial court. None of these provisions has had any effect on appellee. They certainly cannot have an *adverse* effect on him, since together they may operate to permit the registrar to *benefit* appellee by terminating the court order of suspension. Appellee's arguments that these provisions improperly confer appellate jurisdiction on the registrar or reduce the court to an agent for the registrar allege no damage to or deprivation of appellee's rights. Thus, he has no standing.

An additional, related problem exists regarding the justiciability of this case.

"It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect. It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies. The extension of this principle includes enactments of the General Assembly * * *." *Fortner* v. *Thomas* (1970), 22 Ohio St. 2d 13, 14, 51 O.O. 2d 35, 257 N.E. 2d 371, 372. This court will not adjudicate rights in a vacuum. *Id.* For a cause to be justiciable, there must exist a real controversy presenting issues which are ripe for judicial resolution and which will have a direct and immediate impact on the parties. *Burger Brewing Co.* v. *Liquor Control Comm.* (1973), 34 Ohio St. 2d 93, 97-98, 63 O.O. 2d 149, 151-152, 296 N.E. 2d 261, 264-265; *Williams* v. *Akron* (1978), 54 Ohio St. 2d 136, 144-146, 8 O.O. 3d 125, 130-131, 374 N.E. 2d 1378, 1383. None of these prerequisites exists under these facts. Appellee's arguments only attack provisions which do not affect him at all, or whose effect can only benefit appellee, and even then only under a set of facts

not presented herein. Even if R.C. 4509.101(B)(2)(b) does reduce the courts to *de facto* agents for the registrar, appellee has failed to demonstrate how he has thereby been affected in any way. Nor has he shown how the alleged conferral of appellate powers on the registrar has had any impact on him whatsoever under these facts. It is my view, therefore, that the judgment of the court of appeals should be reversed and the appeal dismissed. See *White Consolidated Industries* v. *Nichols* (1984), 15 Ohio St. 3d 7, 9-10, 15 OBR 6, 8, 471 N.E. 2d 1375, 1377.

## II

As explained *supra,* it is my conviction that appellee lacks the requisite standing under these facts. However, since the parties herein have addressed their essential arguments to the merits of this cause, and since the majority has in fact proceeded to decide these substantive arguments, I feel compelled to make the following points.

Today's majority opinion reaffirms this court's holding in *South Euclid* v. *Jemison* (1986), 28 Ohio St. 3d 157, 28 OBR 250, 503 N.E. 2d 136. The majority in the instant cause engages in no analysis of these sections, but simply relies on *South Euclid* without discussion. The *South Euclid* court ruled that R.C. 4509.101(B)(3)(a) and (D) are unconstitutional. For the reasons that follow, *South Euclid* was not properly decided.

R.C. 4509.101(B)(3)(a) provides in relevant part:

"In the case of an owner or defendant who has been identified in a court's notice to the registrar under division (B)(2)(b) of this section, the registrar shall notify the person that he must present the registrar with proof of financial responsibility in accordance with this section, surrender to the registrar his certificate of registration, registration plates, and license, or submit a statement subject to section 2921.13 of the Revised Code that he did not operate or permit the operation of the motor vehicle at the time of the offense and has not failed to appear in court on the charge of the traffic offense. Notification shall be in writing, and sent by certified mail to the person at his last known address as shown on the records of the bureau of motor vehicles. The person shall, within fifteen days after the date of the mailing of such notification, present such proof of financial responsibility, surrender such certificate of registration, registration plates, and license to the registrar in a manner set forth in division (A)(4) of this section or submit the statement required under this section together with such other information as the person considers appropriate. The registrar shall make an investigation to determine, upon the basis of the statement and information submitted by the person and such other evidence that the registrar may require from the person or discover in the course of the investigation, whether there is a reasonable basis for believing that the person has operated or permitted the operation of the motor vehicle at the time of the traffic offense without the operation being covered by proof of financial responsibility. If the registrar determines that such a reasonable basis exists, the registrar shall afford the person an opportunity for hearing, after due notice of the time and place for hearing given to the person in accordance with the provisions of this section, to determine whether the person has violated division (A) of this section."

The *South Euclid* court held that the above provision violated the doctrine of separation of powers by granting the registrar the power of appellate review of a trial court's suspen-

40

sion order. I believe this conclusion is wrong.

In approaching the issue of the constitutionality of a legislative enactment, courts are bound to indulge every presumption in favor of upholding the enactment. *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 61, 4 OBR 150, 151, 446 N.E. 2d 449, 450. This is no mere platitude. It is the embodiment of a wise and profound principle, based on the same doctrine of separation of powers, which recognizes that in matters within the authority of the legislature, courts must defer to the judgment of that body unless it appears *beyond a reasonable doubt* that the legislature has overstepped its bounds. *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142, 147, 57 O.O. 134, 137, 128 N.E. 2d 59, 63. Thus, where a statute yields itself to two possible interpretations, one of which would render it valid, and the other invalid, " ' " * * * the court should adopt the former, so as to bring the act into harmony with the Constitution." ' " *Id.* at 149, 57 O.O. at 138, 128 N.E. 2d at 64.

In my view, a reasonable interpretation of R.C. 4509.101(B)(3)(a) is available which would eliminate the impermissible conferral of appellate powers found by the *South Euclid* court. The investigatory power granted to the registrar by this provision is expressly limited to those persons identified in R.C. 4509.101(B)(2)(b).[3] Most of the persons so identified have not been convicted and are thus not subject to any court order. Any further action by the registrar with regard to these persons cannot be characterized as review of a court order. The only persons identified in R.C. 4509.101(B)(2)(b) who are already under court order are those who are "not in compliance with an order * * *." Obviously, in such a case, a court order has been issued, and it could be said that, with regard to these persons *only,* R.C. 4509.101(B)(3)(a) permits appellate review of a court order by the registrar. However, another reasonable interpretation exists which would not confer such appellate powers on the registrar.

An order of suspension or impoundment issued by the trial court need not be based on a factual finding by the court that the defendant *was not covered* at the time of the accident. The court need only find that the defendant has "fail[ed] to verify existence of proof of financial responsibility * * *." R.C. 4509.101(B)(1). The *registrar's* subsequent investigation of "whether there is a reasonable basis for believing" that the defendant was not actually covered at the time of the offense is, therefore, not a review of the trial court's order or of any factual finding connected therewith. The trial court in such a case has not made and need not make any such finding. It need only find that the defendant has failed to provide proof of financial responsibility to the court.

---

[3] R.C. 4509.101(B)(2)(b) provides:

"The clerk of courts shall notify the registrar of the court's order, identify any defendant who is not in compliance with an order, identify any defendant who has not been found guilty of the traffic offense charged, unless such defendant has been permitted by the court to present proof voluntarily of financial responsibility establishing to the satisfaction of the court that the operation of the motor vehicle was covered by proof of financial responsibility, or who has forfeited bond or failed to appear on such a charge, identify any owner who is not the defendant but whose motor vehicle was being driven by the defendant at the time of the traffic offense, and send to the registrar any certificates of registration, registration plates, and licenses that it has received."

The same analysis is applicable to R.C. 4509.101(D). It provides:

"Any order of suspension or impoundment issued under this section or division (B) of section 4509.37 of the Revised Code may be terminated at any time if the registrar determines upon a showing of proof of financial responsibility that the operator or owner of the motor vehicle was in compliance with division (A)(1) of this section at the time of the traffic offense or accident which resulted in the order against the person. Such a determination may be made without a hearing. This division does not apply unless the person shows good cause for the person's failure to present satisfactory proof of financial responsibility to the court or registrar prior to the issuance of the order."

The *South Euclid* court found that this provision impermissibly empowered the registrar to review "a final factual finding made by the trial court, *i.e., that the defendant was not financially responsible* pursuant to the statute at the time the traffic offense was committed." (Emphasis added.) *Id.* at 163, 28 OBR at 255, 503 N.E. 2d at 141. Again, the trial court makes no such finding. Pursuant to R.C. 4509.101(B)(1), the trial court shall order suspension and impoundment if a defendant who pleads guilty or is found guilty "fails to verify existence of proof of financial responsibility * * *." This is not a factual finding that the defendant was actually not covered. The registrar's subsequent investigation of whether the defendant was actually covered is therefore *not* appellate review of a "final factual finding" as determined in *South Euclid.*

Thus, credible grounds exist upon which to uphold the validity of R.C. 4509.101(B)(3)(a) and (D). In my view, the *South Euclid* court acted rashly in striking down these provisions as unconstitutional. R.C. 4509.101(B)(3)(a) and (D) simply do not provide what the *South Euclid* court said they provide. *South Euclid* should be overruled.

### III

While I vigorously disagree with today's affirmance of *South Euclid*, I do concur in the majority's finding that R.C. 4509.101(B)(1) and (B)(2)(b) do not unconstitutionally confer appellate review powers on the registrar. The majority is clearly correct in holding that the "appeal" mentioned in R.C. 4509.101(B)(1) refers to review by a higher court, not an administrative officer. I also agree with today's holding that R.C. 4509.101(B)(2)(b) does not impermissibly confer appellate powers on the registrar.

In conclusion, it is my view that appellee did not have the requisite standing to attack those portions of R.C. 4509.101 which he sought to invalidate. Even if he did possess the standing necessary for such a challenge, however, I believe that R.C. 4509.101 is entirely constitutional, and hence I concur in today's holdings that R.C. 4509.101(B)(1) and (B)(2)(b) are not in contravention of the Ohio Constitution. I dissent, however, from the majority's reaffirmance of the ill-conceived *South Euclid* decision. R.C. 4509.101(B)(3)(a) and (D) are constitutional, and the *South Euclid* holding to the contrary should be overruled.