[Cite as *Cleveland v. State Emp. Relations Bd.*, 2024-Ohio-3018.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT**
**COUNTY OF CUYAHOGA**


CITY OF CLEVELAND,          :

     Plaintiff-Appellant,       :         No. 113570

     v.                          :

STATE EMPLOYMENT RELATIONS   :
BOARD, ET AL.,

                              :

     Defendants-Appellees.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 8, 2024

---

Administrative Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-23-973287

---

*Appearances:*


Zashin & Rich Co., LPA, and David P. Frantz, *for appellant*.

Dave Yost, Ohio Attorney General, and Lori J. Friedman, Principal Assistant Attorney General, *for appellee* State Employment Relations Board.

Muskovitz & Lemmerbrock, LLC, Ryan J. Lemmerbrock, and Brooks W. Boron, *for appellee* Cleveland Association of Rescue Employees.

MICHELLE J. SHEEHAN, J.:

{¶ 1} The City of Cleveland (the "City") appeals the trial court's denial of its administrative appeal of appellee State Employment Relations Board's ("SERB") order and decision finding that the City violated R.C. 4117.11(A)(1) and (A)(5) by refusing to bargain with appellee Cleveland Association of Rescue Employees, I.L.A., Local 1975 ("CARE"), regarding its decision to hire part-time employees and assign bargaining-unit work to those employees. Because we do not find that the trial court abused its discretion in affirming SERB's opinion and order, we affirm the judgment.

## I. PROCEDURAL HISTORY AND RELEVANT FACTS

### A. The Collective Bargaining Agreement Between CARE and the City

{¶ 2} CARE is the bargaining representative for all full-time emergency medical technicians, emergency medical dispatchers, paramedics, and sergeants employed by the City. CARE and the City are parties to a Collective Bargaining Agreement (the "CBA.") Relevant to the issues raised in this appeal, the CBA contains, in Article 3(A)-(J) of the CBA, a list of management rights reserved to the City. The CBA further contains a zipper clause and a reservation of rights clause within Article 3 of the CBA, which reads in relevant part:

> The parties acknowledge that during the negotiations which resulted in this Contract each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law or regulation from the area of collective bargaining and that the understanding and agreements arrived at by the parties after

the exercise of those rights and opportunities are set forth in this Contract. Therefore, the parties voluntarily waive the right to demand new proposals on any subject or matter, not included herein, during the term of this Contract, even though such subject matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Contract.

Notwithstanding §4117.08 of the Ohio Revised Code, the Employer is not required to bargain on any subjects -- including, but not limited to, those enumerated above --reserved to and retained by the City under this Article. *Therefore, the Union agrees that, during the life of this Agreement, the City shall have no obligation to bargain collectively with respect to the exercise of any rights reserved to and retained by it pursuant to either Section 4117.08(C) of the Revised Code or pursuant to this Article of this Agreement.*

(Emphasis added.)

B. Proceedings Between the City and CARE Before CARE Filed Unfair Labor Charges With SERB

{¶ 3} Due to a lack of emergency medical service employees, the City operated less ambulances. This led to an increase in response times as well as an increased workload on CARE members. The City mandated overtime for the workforce, but some overtime assignments were refused.

{¶ 4} On June 14, 2021, the City notified CARE regarding a labor management committee meeting scheduled for June 17, 2021, with an agenda regarding the potential hiring of part-time paramedics to remedy staffing shortages. Thereafter, CARE asked that the City allow additional CARE board members to attend the meeting and that the City provide it with a proposal before the meeting. The City approved the request for additional members to attend the meeting. It also

provided CARE with a summary of the City's plan to hire 20 part-time paramedics with non-union status. CARE then provided the City with a document titled "CARE Staffing Solutions" to address the staffing; it did not address the City's plan but proposed that the CBA be renegotiated.

{¶ 5} At the June 17th meeting, the City presented a plan to hire part-time paramedics to perform CARE bargaining unit work. CARE responded by requesting the City bargain the decision, but the City refused. The City argued that it did not have a requirement to negotiate the hiring of part-time paramedics. On June 24, 2021, the City responded to CARE by stating that it was willing to discuss the plan to hire part-time paramedics but was not willing to discuss modification of the CBA. On June 30, 2021, CARE communicated to the City that bargaining with it was required regarding the City's intent to transfer CARE work to non-bargaining unit employees. CARE further stated that its request to bargain was not preconditioned on the parties reopening of the CBA.

{¶ 6} On July 9, 2021, CARE requested a meeting with the City to bargain the City's decision to hire part-time employees but stated it did not want to meet if the City was only interested in receiving comments on its decision to hire part-time paramedics. The City responded that it would meet but again said it would not waive its position that it had no requirement to bargain the hiring of part-time paramedics. On July 21, 2021, CARE and the City met and discussed multiple issues, including whether part-time employees would be included in the bargaining unit, limitation

on the number of part-time hires, and wages for the part-time employees. CARE asked the City to address the proposals it sent within its document, "CARE Staffing Solutions." The meeting concluded with the parties scheduling another meeting for July 30, 2021, and with the City agreeing to provide written responses to the issues raised by CARE.

{¶ 7} On July 22, 2021, CARE informed the City that any terms between CARE and the City must be agreed upon and in writing. On July 28, 2021, after not receiving a written response from the City as agreed on July 21, 2021, CARE advised the City that it did not see a reason to continue discussions unless the City sent CARE terms in writing that could be enforced. On July 29, 2021, the City provided CARE with a single-page document titled, "City's Proposal to CARE Regarding Hiring of Part-Time EMT-Paramedics." The City stated that its plan to hire part-time paramedics did not impact the CBA and that it had the right to hire part-time employees because it is a management right. The City also said it would not relinquish the right to hire part-time employees by virtue of a memorandum of understanding, but would enter into a memorandum of understanding with CARE in exchange for CARE not filing a grievance, unfair labor practice, or lawsuit challenging a plan implemented consistent with the terms of a memorandum of understanding. CARE cancelled the July 30, 2021 meeting because of the City's position that it did not have to bargain the hiring of part-time paramedics.

{¶ 8} On August 13, 2021, the City notified CARE of its intent to proceed with the hiring part-time paramedics. On September 10, 2021, the Civil Service Commission approved a posting for part-time paramedic positions. Because of an error in the listing, the City relisted the job posting on September 24, 2021. The posting listed job duties performed by CARE members. The City thereafter accepted applications but did not hire any part-time paramedics.

C. SERB Proceedings and Decision and Order

{¶ 9} On August 27, 2021, CARE filed an unfair labor practice charge with SERB alleging the City violated R.C. 4117.11(A)(1) and (5) by unilaterally assigning bargaining unit work to non-bargaining unit, part-time employees.[1] On November 28, 2021, SERB determined probable cause existed that a violation may have occurred and issued a Finding of Probable Cause and Direction to Hearing in which it authorized the issuance of a complaint and referred the matter to a hearing to determine whether the City violated R.C. 4117.11(A)(1) and (5) when it refused to bargain its decision to assign bargaining unit work to non-bargaining unit, part-time employees. On August 23, 2022, a hearing was held. Thereafter, an administrative law judge issued a proposed order recommending that SERB find the City in violation of R.C. 4117.11(A)(1) and (5).

---

[1] CARE also alleged the City committed an unfair labor practice by unilaterally requiring new emergency medical service employees to sign a cost reimbursement agreement.

{¶ 10} On December 19, 2022, SERB issued an opinion adopting the administrative law judge's findings of fact, analysis and discussion, and conclusions of law, finding the City violated R.C. 4117.11(A)(1) and (5). Within the opinion, SERB ordered the City to cease and desist from refusing to bargain collectively with CARE and to bargain in good faith with CARE over the reassignment of bargaining unit work to non-bargaining unit, part-time employees.

D. Administrative Appeal to the Trial Court

{¶ 11} On January 1, 2023, the City appealed SERB's opinion and order, assigning four errors. The City's first assigned error reads:

> SERB erred when it failed to find that CARE waived, through the language of its collective bargaining agreement with the City any right to bargain with respect to the hiring of part-time paramedics in the City's Division of Emergency Medical Service.

{¶ 12} In resolving the first assigned error, the trial court concluded that SERB did not err by determining CARE did not waive any right to bargain with respect to the hiring of part-time paramedics. The trial court reasoned that "the City attempted to reassign bargaining unit work to non-bargaining unit, employees without bargaining the issue. . . . A plain reading of Article 3 of the CBA reveals that CARE did not waive the City's statutory requirement."

{¶ 13} The City's second assigned error reads:

> SERB erred when it improperly held that the City did not bargain in good faith, despite the undisputed facts that the City provided CARE with notice of its tentative plan to hire part-time paramedics prior to implementation, met with CARE multiple times to discuss the tentative

plan, and, in response to items raised by CARE, made written proposals that included concessions.

{¶ 14} In resolving the second assigned error, the trial court found that "SERB correctly determined that the City did not bargain in good faith." The trial court reasoned that "[t]he City was consistently clear in its communications with CARE, that the City has no obligation to bargain the City's decision to hire part-time paramedics because the hiring of part-time paramedics is within the management rights of the City."

{¶ 15} The City's third assigned error reads:

SERB erred when it improperly held that CARE did not waive, through its actions, any right to bargain with respect to the hiring of part-time paramedics.

{¶ 16} In resolving the third assigned error, the trial court found that "[b]ased on the City's communications regarding the City having no obligation to bargain the issue, SERB did not err in determining CARE did not waive its right to bargain the City's hiring of part-time paramedics."

{¶ 17} The City's fourth assigned error reads:

SERB erred when it improperly held that the matter is ripe, when the undisputed evidence established that the City has not hired any part-time paramedics, there is no eligible list to hire from, and there is no active Civil Service posting for part-time paramedic positions.

{¶ 18} In resolving the fourth assigned error, the trial court found "SERB correctly held that while the City has not hired any part-time paramedics, the City has implemented a plan to hire part-time paramedics creating a present and

imminent impact on the parties.  Therefore, a real controversy exists that is ripe for judicial resolution."

## II.  LAW AND ARGUMENT

### A.  Standard of Review of an Administrative Appeal

{¶ 19}  Our review of a trial court's decision on an appeal from an order of an administrative agency is more limited than that of the trial court.  *Lorain City School Dist. Bd. of Edn. v. State Emp. Rels. Bd.*, 40 Ohio St.3d 257, 260-261 (1988).  The trial court is tasked with examining evidence and "the findings of the board as to the facts, if supported by substantial evidence, on the record as a whole, are conclusive." R.C. 4117.13(B).  In this regard, we are "to determine only if the trial court has abused its discretion." *Id.*  However, the common pleas court reviews legal issues de novo.  *Shell v. Ohio Dept. of Job & Family Servs.*, 2024-Ohio-160, ¶ 8 (8th Dist.) "[I]t is the role of the judiciary, not administrative agencies, to make the ultimate determination about what the law means. Thus, the judicial branch is *never* required to defer to an agency's interpretation of the law."  *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, ¶ 3.

{¶ 20} An abuse of discretion "'implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'" *Id.*, quoting *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster*, 22 Ohio St.3d 191, 193 (1986).  Further, an abuse of discretion also "implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio

St.3d 217, 219 (1983). Trial "courts lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39. Absent such abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. *Lorain City School Dist. Bd. of Edn.* at 261.

## B. The City Is Required to Bargain With CARE the Reassignment of Bargaining Members Work to Non-bargaining Employees

### 1. CARE did not waive the requirement that the City bargain the reassignment of work to non-bargaining unit employees under the language in the CBA

{¶ 21} The City's first assignment of error reads:[2]

The Trial Court erred in affirming the State Employment Relations Board's ("SERB" or "the Board") holding that Cleveland Association of Rescue Employees ("CARE" or "the Union") did not waive, through the language of its collective bargaining agreement ("CBA") with the City of Cleveland ("City"), any right to bargain with respect to the hiring of part-time paramedics in the City's Division of Emergency Medical Service ("EMS").

{¶ 22} The City argues that because the parties reserved management rights to it in the CBA, it was not required to bargain with CARE regarding the hiring of part-time paramedics. CARE and SERB argue that the trial court properly found that the zipper clause and the reservation of rights clause within the CBA do not serve as a waiver on the part of CARE and that, because of this, both SERB and the trial court properly found there was no waiver.

---

[2] We will address the City's assignments of error out of the order presented.

{¶ 23} In Article 3(A)-(K) of the CBA, the parties agreed to a list of management rights reserved to the City. These reserved rights are similar to the management rights reserved to public employers in R.C. 4117.08(C). The CBA further contains a zipper clause, which is "a contract provision that limits the agreement between the parties solely to those matters included in the CBA." *Portsmouth v. Ohio Council 8, AFSCME*, 2001-Ohio-2503, 15 (4th Dist.). The CBA also contains a reservation-of-rights clause. As to the zipper clause and the reservation of rights, Article 3 of the CBA reads in relevant part:

> The parties acknowledge that during the negotiations which resulted in this Contract each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law or regulation from the area of collective bargaining and that the understanding and agreements arrived at by the parties after the exercise of those rights and opportunities are set forth in this Contract. Therefore, the parties voluntarily waive the right to demand new proposals on any subject or matter, not included herein, during the term of this Contract, even though such subject matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Contract.
>
> Notwithstanding R.C. 4117.08, the Employer is not required to bargain on any subjects — including, but not limited to, those enumerated above — reserved to and retained by the City under this Article. *Therefore, the Union agrees that, during the life of this Agreement, the City shall have no obligation to bargain collectively with respect to the exercise of any rights reserved to and retained by it pursuant to either Section 4117.08(C) of the Revised Code or pursuant to this Article of this Agreement.*

(Emphasis added.)

{¶ 24} In interpreting these clauses, the trial court found:

Pursuant to the CBA and R.C. 4117.08, assigning bargaining unit work to non-bargaining unit employees requires bargaining between the City and CARE. A plain reading of Article 3 of the CBA reveals that CARE did not waive the City's statutory requirement to bargain this issue. Unless a CBA specifically removes a right provided to employees by statute, an employee retains the statutory right. *State ex rel. Clark*, 48 Ohio St.3d 19, 548 N.E.2d 940, 942 (1990).

{¶ 25} CARE argues the City was required to bargain the issue of hiring part-time employees who would not be bargaining unit members to perform work covered by the CBA. The City claims that pursuant to the CBA, CARE waived its right to have the issue negotiated. R.C. 4117.08(A) provides the right to bargain a decision that "affects wages, hours, terms and conditions of employment." Moreover, R.C. 4117.08(C), after listing management rights reserved to public employers, provides in relevant part:

The employer is not required to bargain on subjects reserved to the management and direction of the governmental unit except as affect wages, hours, terms and conditions of employment, and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement.

{¶ 26} The reassignment of work to non-union employees has long been held to be an issue that a public employer must negotiate with a union. *Lorain City School Dist. Bd. of Edn.*, 40 Ohio St.3d at paragraph three of the syllabus ("The reassignment of work previously performed by members of a bargaining unit to persons outside the unit is a mandatory subject for collective bargaining under R.C. 4117.08(A) and (C)."); *Cleveland Bd. of Edn. v. State Emp. Relations Bd.*, 129 Ohio App.3d 671, 675 (8th Dist. 1998).

{¶ 27} In order for the City to have the ability to reassign work to non-bargaining unit members without negotiating with CARE, there must be a reservation of that right in the CBA or a specific waiver of such right in the CBA. "Unless a collective bargaining agreement specifically eliminates a right provided an employee by statute, an employee retains his entitlement to that right." *Lakewood v. State Emp. Relations Bd.*, 66 Ohio App.3d 387, 392 (8th Dist. 1990), citing *State ex rel. Clark v. Greater Cleveland Regional Transit Auth*, 48 Ohio St.3d 19 (1990). Further, "'the evidence must be clear that the Union consciously yielded its statutory right.'" *Id.*, quoting *Am. Cyanamid Co.*, 185 N.L.R.B. 981, 985 (1970).

{¶ 28} In order to unilaterally reassign bargaining unit work, the City would have to point to a specific waiver by CARE in the CBA. The CBA does provide a waiver on CARE's part as to "the exercise of any rights reserved to and retained by it pursuant to either Section 4117.08(C) of the Revised Code or pursuant to this Article of this Agreement." The ability to reassign work does not appear in the list of reserved rights under Article 3(A)-(K), nor does such appear in R.C. 4117.08(C). Further, R.C. 4117.08(C) specifically requires that a public employer negotiate issues that "affect wages, hours, terms and conditions of employment, and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement."

{¶ 29} As such, we do not read the zipper clause and the reservation of rights clause in the CBA to operate as an explicit waiver of CARE's right to require the City

to bargain the reassignment of work and we find that the trial court did not abuse its discretion in determining CARE did not explicitly waive the right to bargain the hiring of part-time employees who would be assigned bargaining unit work.

{¶ 30} The first assignment of error is overruled.

2. CARE Did Not Waive Its Ability to File a Complaint Alleging Unfair Labor Practices Against the City

{¶ 31} The City's third assignment of error reads:

The Trial Court erred in affirming SERB's holding that CARE did not waive, through its actions, any right to bargain with respect to the hiring of part-time paramedics.

{¶ 32} The City argues that the trial court abused its discretion in determining that CARE did not waive its right to bargain the issue by its actions discontinuing meetings with the City. However, "a waiver must be 'clear and unmistakable' from the terms of an agreement, and . . . where an alleged waiver is based upon negotiations, the evidence must be clear that the Union consciously yielded its statutory right.'" *Lakewood,* 66 Ohio App.3d at 392, quoting *Am. Cyanamid Co.*, 185 N.L.R.B at 985.

{¶ 33} A series of meetings and communications were held between the City and CARE regarding the hiring of part-time paramedics. Throughout that time and after, the City maintained that it had the right to hire non-bargaining unit employees and assign bargaining unit work to those employees without bargaining that issue. The trial court determined that CARE did not waive its right to bargaining by

refusing further negotiation because of the City's continued stance that it was not required to bargain. Because of the City's consistent position, we cannot say the trial court abused its discretion by finding CARE did not waive its right to bargain with the City's hiring of part-time paramedics by discontinuing negotiations.

{¶ 34} The third assignment of error is overruled.

C. The City Maintained a Position in Bad Faith That It Was Not Required to Bargain With CARE Regarding the Reassignment of Bargaining Unit Work to Non-bargaining Unit Employees

{¶ 35} The City's second assignment of error reads:

> The Trial Court erred in affirming SERB's holding that the City did not bargain in good faith, despite the undisputed facts that the City provided CARE with notice of its tentative plan to hire part-time paramedics prior to implementation, met with CARE multiple times to discuss the tentative plan, and, in response to items raised by CARE, made written proposals that included concessions.

{¶ 36} SERB found that the City did not bargain in good faith because the City maintained the position that it had no obligation to bargain. The trial court found that the City's final proposal maintained that it would not agree to those part-time paramedics becoming members of the CARE bargaining unit.

{¶ 37} The Ohio Supreme Court has held that the assignment of bargaining unit work to non-bargaining unit employees is an act that requires bargaining. *Lorain City School Dist. Bd. of Edn.*, 40 Ohio St.3d at paragraph three of the syllabus. The City does not contest this holding and, in briefing to this court, stated that it reserved the right to hire employees within the CBA. However, the City did

not explicitly reserve the right to reassign bargaining unit work to non-bargaining unit employees. In resolving the first assignment of error, we found that there was no waiver in the CBA and that the law requires the City to bargain with CARE over such reassignment of work. *Id.*

{¶ 38} The issue of reassignment of bargaining unit work to non-bargaining unit employees has long been held to require negotiation. Because of this and the City's continued refusal to acknowledge that it had a duty to bargain, we cannot say the trial court abused its discretion by finding the City's refusal to bargain was not good-faith bargaining.

{¶ 39} The second assignment of error is overruled.

D. Under the CBA, There Was an Issue Ripe for Resolution

{¶ 40} The City's fourth assignment of error reads:

The Trial Court erred in holding that the matter is ripe, when the undisputed evidence established that the City has not hired any part-time paramedics, there is no eligible list from which to hire, and there is no active Civil Service posting for part-time paramedic positions.

{¶ 41} The City argues that because it had not hired any part-time employees, CARE's complaint before SERB was not ripe and should have been dismissed. "In order to be justiciable, a controversy must be ripe for review." *Keller v. Columbus,* 2003-Ohio-5599, ¶ 26. "For a cause to be justiciable, there must exist a real controversy presenting issues which are ripe for judicial resolution and which

will have a direct and immediate impact on the parties." *State v. Stambaugh,* 34 Ohio St.3d 34, 33 (1987).

{¶ 42} The trial court found that the City took substantial action toward putting its plan to hire part-time employees into effect by having approved the position, posting the position, accepting applications, and not rescinding its plan. We cannot say that the trial court abused its discretion by finding that these actions made the issue of assignment of bargaining unit work to non-bargaining unit employees a present and imminent concern ripe for review by SERB.

{¶ 43} The fourth assignment of error is overruled.

III. CONCLUSION

{¶ 44} The trial court did not abuse its discretion in determining that CARE did not explicitly waive its right to require the City to bargain over its plan to hire non-bargaining unit, part-time employees who would be assigned CARE bargaining unit work. Further, because of the City's consistent position that it was not required to bargain with CARE, we cannot say the trial court abused its discretion in finding CARE did not waive its right to bargain by discontinuing communication with the City prior to filing a complaint with SERB.

{¶ 45} The issue of whether an employer may reassign bargaining unit work to non-bargaining unit employees has long been held to require negotiation. Because of this, we cannot say the trial court abused its discretion by finding the City's refusal to bargain was not good-faith bargaining. Finally, we cannot say the

trial court abused its discretion by finding that the City's actions in approving part-time paramedic positions, posting those positions, accepting applications, and not rescinding its plan made the issue ripe for review by SERB.

{¶ 46} Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
MICHAEL JOHN RYAN, J., CONCUR