STATE ex rel. KELLER et al., Appellants,

v.

COLUMBUS et al., Appellees.

[Cite as *State ex rel. Keller v. Columbus,* 164 Ohio App.3d 648, 2005-Ohio-6500.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–52.

Decided Dec. 8, 2005.

650

Gittes & Schulte, Frederick M. Gittes, and Kathaleen B. Schulte, for appellants.

Vorys, Sater, Seymour & Pease, L.L.P., James E. Phillips, John J. Kulewicz and Elizabeth A. Laliberte, for appellee Fraternal Order of Police, Capital City Lodge No. 9.

Richard C. Pfeiffer Jr., Columbus City Attorney, and Glenn B. Redick, for appellees city of Columbus and James G. Jackson.

---

BRYANT, Judge.

{¶ 1} Plaintiffs-appellants, Federal Public Defender for the Southern District of Ohio Steven R. Keller, the Ohio Civil Rights Commission, Copwatch, and the Columbus Employment Lawyers Association, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, Fraternal Order of Police, Capital City Lodge No. 9 ("FOP"). Because no genuine issue of material fact exists and appellees are entitled to judgment as a matter of law, we affirm.

{¶ 2} On January 19, 2000, appellants filed a lawsuit against the city of Columbus, alleging that the city and the FOP were negotiating a collective-bargaining agreement ("CBA") that established schedules for the destruction of public records in violation of the Public Records Act ("PRA"). Appellants alleged that the CBA would violate the PRA because, unlike R.C. 149.39, (1) it does not provide to the City Records Commission ("commission") power to revise the document-retention schedule, (2) it would allow destruction of documents without the required review by the State Auditor, and (3) it would allow the destruction of "member identifiable information" from public records kept in an electronic database for which no retention schedule permits destruction. Appellants further alleged that under a recent CBA, the FOP pursued with an arbitrator, as opposed to the courts, its grievances relating to the destruction of records pursuant to the CBA.

{¶ 3} The FOP filed a motion to intervene on February 1, 2000. On April 12, 2000, appellants filed an amended complaint adding a petition for a writ of mandamus to compel the city to produce certain public records. The trial court granted the FOP's motion to intervene and issued the writ of mandamus compelling the city to produce the requested public records. The city and the FOP then filed a motion to dismiss appellants' complaint for failure to state a claim under Civ.R. 12(B)(6). The trial court granted the motion to dismiss, stating that the CBA between the city and the FOP mirrors the commission's

record-retention schedule with respect to the retention periods of "disciplinary records." Appellants appealed.

{¶ 4} This court reversed in part, holding that to the extent the amended complaint alleged that the city or the FOP could destroy certain public records in violation of the PRA or commission rules, it stated a claim for which relief could be granted. Appellants appealed to the Ohio Supreme Court. *Keller v. Columbus,* 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964 (*"Keller I"*). The Ohio Supreme Court concluded, as this court did, that the trial court erred in examining matters beyond the pleadings, such as the CBA's and the commission's records-retention schedules. Noting that its "conclusion requires only a remand to consider the matter as on a motion for summary judgment," the court further observed that its finding error in the trial court's procedure "does not prohibit our consideration of the key issue of whether the complaint states a claim." Id. at ¶ 19.

{¶ 5} Looking only to the allegations in the complaint, the court examined appellants' proposition that the destruction of public records is not a proper subject of collective bargaining. Although the court declined to adopt such a "sweeping proposition," it held that the PRA controls over any conflicting provision in a CBA. Id. at ¶ 20. Therefore, "any provision in a collective bargaining agreement that establishes a schedule for the destruction of public records is unenforceable if it conflicts with or fails to comport with all of the dictates of the Public Records Act." Id. at ¶ 23.

{¶ 6} Accepting the allegations of appellants' complaint as true, the court held that the following claims survived appellees' Civ.R. 12(B)(6) motion to dismiss: (1) declaratory judgment premised on allegations that an *existing* CBA conflicts with or fails to comport with the dictates of the PRA, but not to include appellants' claim for declaratory judgment regarding the negotiation of a future agreement because such a claim was not a justiciable controversy ripe for review; (2) violation of R.C. 149.351(A) to the extent that appellants alleged that the CBA calls for destruction of records without requiring notice to the State Auditor for review; (3) violation of R.C. 149.351(A) to the extent that appellants alleged that the CBA contains provisions establishing schedules for destruction of records that unlawfully limit the commission in revising retention schedules; (4) violation of R.C. 149.351(A) to the extent that appellants allege that the CBA calls for destruction of member-identifiable information after the information is entered into an electronic database, where the destruction conflicts with the commission's retention schedule that does not provide for destruction of the information once the information is converted to the database; and (5) injunctive relief pursuant to R.C. 149.351(B) to the extent that an *existing* CBA calls for, or threatens, destruction of records not authorized for destruction by law or commission rule,

but not to include injunctive relief related to negotiations of a future agreement. *Keller I,* 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964. Although the court held that the destruction or threatened destruction of a public record permits an aggrieved person to commence a civil action for injunctive relief, it also held that negotiation of a future CBA is too speculative to constitute a "threat" to destroy a public record.

{¶ 7} The court also denied appellants' request for a court order requiring the city and the FOP to notify appellants whenever a grievance regarding the disposition of a public record is filed. Appellants noted that provisions within a CBA permitting destruction of records are subject to the CBA's grievance procedure and, ultimately, arbitration. Appellants argued that disposition of records in that manner violated the PRA because "it makes the decision to destroy in private without public scrutiny." The court rejected appellants' argument, stating that because the PRA does not require notice when a record is destroyed, the court would not add such a requirement without a legislative enactment.

{¶ 8} After remand to the trial court, the FOP filed a motion for summary judgment. Concluding that the CBA does not conflict with the commission's retention schedule, the trial court granted the FOP's motion. Appellants appeal, assigning the following errors:

1. The trial court erred in staying discovery and requiring the appellant to respond to the summary judgment motion without discovery.

2. The trial court erred in concluding that the FOP contract and the City's Retention Schedule are not in conflict.

{¶ 9} An appellate court's review of summary judgment is conducted under a de novo standard. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327; *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. Summary judgment is proper only when the parties moving for summary judgment demonstrate that (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 677 N.E.2d 343.

{¶ 10} In enacting the PRA, the General Assembly sought to provide broad access to public records. *State ex rel. Dispatch Printing Co. v. Columbus* (2000), 90 Ohio St.3d 39, 734 N.E.2d 797. The statute must be liberally construed to achieve its purpose. *Id.* "When the release of a public record is challenged, it is

the function of the courts to analyze the information to determine whether it is exempt from disclosure." Id. at 41, 734 N.E.2d 797.

{¶ 11} R.C. 149.351(A) provides, "All records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions." R.C. 149.39 provides for the creation of a records commission in each municipal corporation. The commission's function is "to provide rules for retention and disposal of records" and "to review applications for one-time records disposal and schedules of records retention and disposition submitted by municipal offices." R.C. 149.39. In accordance with R.C. 149.39, Columbus created the City Records Commission. On June 6, 1994, the commission adopted a schedule for the retention and disposition of police disciplinary records ("commission retention schedule").

{¶ 12} R.C. 149.39 also requires that the Auditor of State and the Ohio Historical Society ("OHS") be notified of proposed records disposal; the auditor or OHS may prevent the records from being destroyed. R.C. 149.39 further provides that the commission "may at any time review any schedule it has previously approved, and for good cause shown may revise that schedule."

{¶ 13} In the second assignment of error, appellants contend that the trial court erred in concluding that the CBA does not conflict with the commission retention schedule. Appellants first argue the Ohio Supreme Court's ruling in *Keller I* mandates that specific language be included in any CBA between the city and the FOP explicitly requiring notice to the auditor and OHS regarding destruction of public records.

{¶ 14} Initially, we find no language in *Keller I* that mandates a provision in the CBA specifically requiring notice to the auditor and OHS. Moreover, we are reluctant to require that the CBA include certain statutory provisions, be they under the PRA or some other legislative enactment. Such a requirement would unnecessarily burden contracts by forcing recitation of a multitude of provisions that are effective and enforceable whether or not they are included in the CBA. Here, no provision in the CBA purports to prevent, or actually prevents, notice from being given; nor does any provision permit the destruction of documents without providing notice. Indeed, nothing in the CBA suggests that the city will not provide notice to the State Auditor or the OHS as required by the PRA. The CBA thus does not conflict with or fail to comport with the PRA. *Keller I,* 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964.

{¶ 15} The Ohio Supreme Court has made clear that parties are not permitted to alter legal relationships between a government and the public at large via a CBA. *Dispatch Printing Co.,* 90 Ohio St.3d 39, 734 N.E.2d 797

(stating that R.C. Chapter 4117, pertaining to CBAs, was never meant to allow parties to circumvent other laws passed by the General Assembly through the collective-bargaining process); *Keller I*, supra (holding that the PRA controls over any conflicting provision in a CBA); *State ex rel. Dispatch Printing Co. v. Wells* (1985), 18 Ohio St.3d 382, 18 OBR 437, 481 N.E.2d 632 (holding that the PRA requiring disclosure took precedence over a provision in a CBA requiring certain public records to be kept confidential).

{¶ 16} Here, because the CBA is silent on the issue of notice to the State Auditor and the OHS, and because parties may not circumvent enacted laws through a CBA, the PRA controls: notice must be provided in accordance with R.C. 149.39, regardless of the absence of such a provision in the CBA. *Keller I*, 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964. The FOP concedes that requirement. Because the PRA controls, and in the absence of a conflicting provision, we will not require the parties to rewrite the CBA to include an express provision requiring notice to the State Auditor and the OHS.

{¶ 17} Appellants also claim that the CBA unlawfully limits the commission's ability to revise the retention schedule. In *Keller I*, the Supreme Court accepted that allegation as true pursuant to the dictates of Civ.R. 12(B)(6). Subsequent proceedings in the trial court, however, reveal the substance of appellants' argument to be that if the commission revises its retention schedule, as it may at any time, and if that schedule conflicts with the CBA, the FOP will file an unfai-labor-practice charge against the city seeking retention or disposal in accordance with the CBA. Appellants insist that if such a dispute arises, the dispute will be subject to final and binding arbitration under the CBA. Under such circumstances, an arbitrator, not the courts, will have final authority regarding destruction. Appellants maintain that the CBA must include language providing that if the commission revises its retention schedule, the revised schedule takes precedence over or supersedes the CBA schedule.

{¶ 18} The Ohio Supreme Court found that appellants stated a claim for relief because they alleged "provisions in the agreement establish schedules * * * that unlawfully limit the commission in revising retention schedules." Accepting the allegation as true, and noting the commission's power to revise its schedule at any time, the court allowed the claim to survive a motion to dismiss. The court, however, specifically observed that a valid claim must be premised on an existing CBA, noting that future provisions or future CBAs failed to present an issue ripe for review. Although appellants' claims are premised on an existing CBA, the guidelines the Supreme Court set forth in *Keller I* are instructive. Appellants' claim concerning the commission's possible revisions to its retention schedule and the resulting conflict with the CBA does not present a justiciable controversy over which the court has jurisdiction.

{¶ 19} Courts of common pleas and divisions thereof have original jurisdiction over all justiciable matters. *Eagle Fireworks, Inc. v. Ohio Dept. of Commerce,* Washington App. No. 03CA28, 2004-Ohio-509, 2004 WL 232869, citing Section 4(B), Article IV, Ohio Constitution. In order to be justiciable, a controversy must be ripe for review. *Keller I,* 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964, at ¶ 26. " 'For a cause to be justiciable, there must exist a real controversy presenting issues which are ripe for judicial resolution and which will have a direct and immediate impact on the parties.' " *Eagle Fireworks* at ¶ 8, quoting *State v. Stambaugh* (1987), 34 Ohio St.3d 34, 38, 517 N.E.2d 526. If the trial court lacked jurisdiction to consider a matter, the reviewing court may not properly decide the merits of the case. Id.

{¶ 20} To determine whether an issue is ripe for review, a court must weigh the following: (1) the likelihood that the alleged future harm will occur, (2) the likelihood that delayed review will cause hardship to the parties, and (3) whether the factual record is sufficiently developed to provide fair resolution. *Forestry Assn., Inc. v. Sierra Club* (1998), 523 U.S. 726, 118 S.Ct. 1665, 140 L.Ed.2d 921. In general, a claim that rests upon future events that may not occur at all, or may not occur as anticipated, is not considered ripe for review. *Eagle Fireworks,* supra, citing *Texas v. United States* (1998), 523 U.S. 296, 118 S.Ct. 1257, 140 L.Ed.2d 406.

{¶ 21} Here, no existing provision in the CBA limits the commission's ability to revise the schedule. That a schedule revision contrary to the CBA will occur is purely speculative, as is appellants' contention that the FOP will file a grievance to enforce the CBA if the commission indeed revises the schedule. In addition, the record evidence does not assist in removing the issue from the realm of speculation. The commission's most recent retention schedule pertaining to public records addressed in the CBA was implemented in 1994; the schedule has not been revised since that time. Further, the record lacks factual evidence to suggest that the commission is going to revise the schedule in the near future. Therefore, the record presents no real threat of destruction, removal, or mutilation of public records in violation of the PRA.

{¶ 22} Moreover, delayed review will not cause hardship to the parties. If the commission revises the schedule in the future, and if the schedule conflicts with the CBA's schedule then in existence, appellants can bring an action for injunctive relief at that time pursuant to R.C. 149.351(B). R.C. 149.351(B) allows any "aggrieved person" to file a civil action to compel compliance with R.C. 149.351(A) of the PRA or to recover a forfeiture in the amount of $1,000 for each violation; each provision allows recovery of reasonable attorney fees.

{¶ 23} In the end, appellants' speculation that a revision contrary to the CBA will occur, and that the FOP will file a grievance to enforce the contrary CBA provision, is insufficient to demonstrate a present, justiciable controversy.

{¶ 24} Appellants further ·maintain that CBA sections 10.10 and 10.12 conflict with the commission's retention schedules 94–34 through 94–39 and schedule 94–189. Specifically, appellants claim that the commission's retention schedule provides for the destruction of public records after the same information is entered into an electronic database, but the commission's schedule does not address when the electronic database can be destroyed. According to appellants, the record must exist in perpetuity. Appellants thus assert that a provision in the CBA permitting destruction of public records contained only in an electronic database conflicts with the commission's retention schedule.

{¶ 25} Initially, we address schedules 94–34 through 94–39 in connection with CBA section 10.10. The index to the commission's retention schedule identifies those schedules as police "disciplinary records." Disciplinary records include incident interview forms, minor reprimands and documented corrective counseling, fleet safety records and written reprimands, suspensions, and leave forfeitures, demotions/terminations, and entries and records of investigations of complaints classified as withdrawn, unfounded, or exonerated. Section 10.10 of the CBA identifies the same list of records identified in schedules 94–34 through 94–39 and replicates the commission's retention schedule. Neither section 10.10 nor schedules 94–34 through 94–39 make any distinction in the disposition of the records based on the format used to maintain the records.

{¶ 26} The Ohio Supreme Court articulated the following rule to be applied to records contained in an electronic database format: "If a records-retention rule makes clear that the destruction timetable applies to all copies of the record, regardless of the storage format, then all forms may be destroyed. However, if a records-retention rule permits the destruction of a public record contingent upon conversion of that information into another format for a purpose such as easier storage or retrieval, but provides no further instruction as to the disposition of the record in the new format, then it is clear that the intent of the commission was for the record in the new format to survive destruction of the old. It will continue to exist as a public record in that format, until the commission takes further action * * * to authorize its destruction." *Keller I*, 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964, at ¶ 37.

{¶ 27} Applying the rule the Ohio Supreme Court set forth, the trial court correctly found that retention and destruction of records contained in schedules 94–34 through 94–39 are not contingent upon their conversion to another format. Nothing in the pertinent schedules differentiates between formats, even though

other schedules do so. Therefore, the retention period for records identified in schedules 94–34 through 94–39 applies to all forms of the records, including paper or electronic. All records identified in the schedules, regardless of the format in which they are kept, are destroyed after the required retention period and any other applicable requirements.

{¶ 28} As a result, the CBA and retention schedules 94–34 through 94–39 are consistent: under both the CBA and the commission's retention schedule, the records are destroyed after the requisite retention periods, regardless of the format in which the records are stored, unless, for example, a civil or criminal action is threatened or pending.

{¶ 29} Appellants also contend that schedule 94–189 conflicts with section 10.12 of the CBA. Schedule 94–189 addresses "file cards indexing individual employee use of force, injuries, chemical mace, use of firearms, citizen complaints, IAB [Internal Affairs Bureau] investigations." Schedule 94–189 provides for retention of the "file cards" until the information is entered into an electronic database. The commission's schedule does not provide for disposition once the information is entered into the database.

{¶ 30} Section 10.12, entitled "Disciplinary Tracking System," provides, "The computerized disciplinary data base and disciplinary tracking system shall expunge disciplinary records in accordance with the time schedule set forth in Section 10.10." Although the section states that "access to computerized disciplinary records which have 'member identifiable information' will be removed from the data base as provided," it also provides that "the descriptive information of the members involved and of the circumstances will be retained (including but not limited to: age, race, sex, and rank of the member issuing and receiving the discipline, the date, shift, and unit of the members involved; and a description of the discipline issued and the circumstance leading thereto)."

{¶ 31} Appellants claim that section 10.12 refers to the electronic database identified in schedule 94–189, and from that premise, they argue that section 10.12 deals with more than just disciplinary records addressed in section 10.10. Appellants therefore claim that section 10.12 violates the commission's retention schedule because section 10.12 allows information other than "disciplinary records" entered into a computer database to be expunged, while schedule 94–189 requires the information contained in an electronic database to be retained. In response, the FOP asserts that records in the Disciplinary Tracking System referred to in section 10.12 are simply another version of the information referred to in paper form in section 10.10.

{¶ 32} Section 10.12 refers to the records identified and referred to in section 10.10. The clear language of section 10.12 refers to expunging only "disciplinary

records." Section 10.10, in turn, expunges only the records identified in the commission's schedules 94–34 through 94–39. Section 10.10 is consistent with schedules 94–34 through 94–39. Therefore, no conflict exists between section 10.12 and the retention schedules.

{¶ 33} Some incidents identified in schedule 94–189 could result in disciplinary measures. In that case, a public record may initially be maintained in accordance with schedules 94–34 through 94–39 as well as schedule 94–189. If actual discipline results from an incident recorded pursuant to 94–189, a different record, a disciplinary record, is maintained. In order to give effect to all the city's schedules, any disciplinary record arising out of an incident that results in discipline must be retained and destroyed in accordance with 94–34 through 94–39. The initial record, akin to a report, of any incident falling under 94–189 is maintained in 94–189 form. For example, if an officer uses a firearm, a record must be kept pursuant to 94–189. If that officer's use of a firearm results in discipline, a record must be kept pursuant to 94–34 through 94–39. After the retention period expires, the disciplinary record is destroyed, and the 94–189 record is maintained.

{¶ 34} The trial court stated that it found "that even if the Schedule 94–189 information is the subject of subsequent disciplinary action governed by Schedules 94–34 through 94–39, to the extent that the Schedule 94–189 record has been converted into a computer database, there is no provision for the database's destruction, and this record must be retained." Appellants argue that, based on this statement, the trial court found a conflict between the CBA and the city's retention schedule.

{¶ 35} The trial court, although stating it a different way, reached the same conclusion we have reached. Remembering that the CBA sections 10.10 and 10.12 do not cover anything other than disciplinary records, the trial court concluded, as do we, that the records maintained in accordance with 94–189 are simply retained in the computer database. To the extent that these records become a disciplinary matter, a "disciplinary record" is maintained in accordance with 94–34 through 94–39. Nothing in the CBA requires or permits destruction of records maintained pursuant to the city's schedule 94–189.

{¶ 36} Appellants insist that the trial court made a factual finding that the records making up schedule 94–189 are not disciplinary records and are not covered by the CBA. To the contrary, the trial court arrived at that conclusion based on the index to the commission's retention schedule, the schedule itself, and the language of the CBA. The index identifies schedules 94–34 through 94–39 as "disciplinary records," and the plain language of the CBA sections 10.10 and 10.12 covers only disciplinary records.

{¶ 37} Because no conflicts exist between the commission's retention schedules and the CBA, appellants' second assignment of error is overruled.

{¶ 38} In the first assignment of error, appellants assert the trial court erred in staying discovery and requiring them to respond to the FOP's motion for summary judgment without discovery. Appellants maintain that further discovery was needed to determine whether CBA section 10.12 refers to the electronic database in schedule 94–189. Appellants claim that they needed the discovery to present information to the trial court about how the electronic database operates and how information is removed from it.

{¶ 39} We review the trial court's resolution of discovery matters, including issuance of a stay of discovery, under an abuse-of-discretion standard. *Burke Lakefront Serv. v. Lemieux*, Cuyahoga App. No. 79665, 2002-Ohio-4060, 2002 WL 1821962, citing *State ex rel. The V. Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (stating that absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues). An abuse of discretion "connotes an unreasonable, arbitrary, or unconscionable decision." Id.

{¶ 40} Here, the trial court did not abuse its discretion in granting a stay of discovery. The FOP moved for summary judgment on April 15, 2004 and attached affidavits to authenticate the documents at issue. On May 3, 2004, appellants sought an extension of time pursuant to Civ.R. 56(F) to respond to the FOP's motion. Appellants claimed that they had not received certain discovery responses and needed additional time to explore both the procedures for destroying police records and the disciplinary database referred to in CBA section 10.12. On May 11, 2004, the trial court granted appellants until September 30, 2004, to conduct discovery.

{¶ 41} On July 15, 2004, a status conference was held, and the parties were told that the summary judgment motion would focus on whether the FOP contract was in compliance with the commission's retention schedule. The FOP filed an amended motion for summary judgment, and the trial court set the motion for an oral hearing. The parties were permitted to call witnesses at the hearing, but were required to make all witnesses available for deposition prior to the hearing. In an entry dated July 28, 2004, the court otherwise stayed further discovery.

{¶ 42} At the oral hearing, the court stated that the central question was whether the commission's retention schedule and the provisions of the CBA were inconsistent. The court asked whether "there [was] anything left in this case if the Court rules that they are consistent?" Counsel for appellants stated, "I do think there's no remaining issue. Although, we have some concerns about the absence of discovery. But basically given your order and the way you want to

approach this, I would agree that it would terminate the case." Appellants added, "[S]ince we believe, and if the Court finds, that there is a conflict, then this case is over because we're entitled to the summary judgment on the other way."

{¶ 43} Even apart from appellants' arguably conceding that the motion for summary judgment turned on issues unrelated to discovery, the trial court did not abuse its discretion in granting the stay. Subsequent to the remand from the Ohio Supreme Court, appellants requested the computer database referred to in CBA section 10.12. The FOP complied with the request and produced a copy of the database. After the FOP filed its initial motion for summary judgment on May 11, 2004, the trial court allowed appellants four months to conduct discovery. Appellants did not serve any further discovery requests prior to the July 15, 2004 status conference, held over two months from the date of the original motion. At that conference, the court determined that the issue came down to whether a conflict existed between the CBA and the commission's retention schedule. Appellants did not object. Importantly, even if appellants felt that additional discovery was needed regarding the database, the trial court specifically permitted either party to depose or present witnesses at the oral hearing on the motion. Appellants did not pursue the opportunity.

{¶ 44} Under these circumstances, the trial court did not abuse its discretion. In light of our ruling on appellants' second assignment of error, how further discovery would have aided appellants is unclear. Accordingly, appellants' first assignment of error is overruled.

{¶ 45} Having overruled appellants' first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

PETREE and KLATT, JJ., concur.