[Cite as *State v. Wiggins*, 2017-Ohio-62.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee | : | |
| | | No. 16AP-170 |
| v. | : | (C.P.C. No. 15CR-3921) |
| Treshawn C. Wiggins, | : | REGULAR CALENDAR |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 10, 2017

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Michael P. Walton,* for appellee.

**On brief:** *Barnhart Law Office LLC,* and *Robert B. Barnhart,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, Treshawn C. Wiggins ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of felonious assault with a firearm specification, and having a weapon while under disability. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 12, 2015, appellant was indicted for felonious assault with a firearm specification, and having a weapon while under disability. (Aug. 12, 2015 Indictment.) The case proceeded to trial on February 1 through 3, 2016.

{¶ 3} The testimony showed that in the early morning of August 2, 2015, Eric Speights flagged down a police officer to report that someone had shot at his vehicle. (Apr. 13, 2016 Tr. Vol I. at 89-90.) The officer observed a bullet hole in the driver's side of the car. (Tr. Vol I. at 91.) Speights described the shooter as "a short male black, very light

skinned, with blondish hair, with twists in his hair." (Tr. Vol I. at 92.) He also reported that the shooter had a band-aid on his face. (Tr. Vol I. at 93.) While the officers thought the description matched an individual they might know, they could not recall the person's name. *Id.*

{¶ 4}  Speights used Facebook to find people nearby and identified a light-skinned guy with a band-aid on his face as the shooter, but the individual's Facebook name was not his real name. (Tr. Vol I. at 94.) The responding officers contacted some other officers and showed them the picture. (Tr. Vol I. at 121-22, 135.)  The other officers identified the person with the band-aid as Treshawn Wiggins. (Tr. Vol I. at 137.)

{¶ 5}  Speights testified about the details of the incident in question. He was returning from a pizza delivery when two men and one woman crossed in front of his car in the middle of the street. (Tr. Vol I. at 161.)  He slammed on his brakes to avoid hitting them. *Id.*  He started yelling at the group and threats were exchanged. (Tr. Vol I. at 165-66.) From the street corner, the person he identified as Wiggins fired about five or six shots at this vehicle. (Tr. Vol I. at 168-70.) Speights flagged down an officer on his way back from another pizza delivery and reported the incident. (Tr. Vol I. at 171-72.)

{¶ 6}  During opening statements, defense counsel told the jury that Wiggins' girlfriend, Daviona Pace, would testify on his behalf that he was watching his child and some nieces and nephews that night. (Tr. Vol I. at 76-77.)  Pace never testified.

{¶ 7}  Wiggins testified in his own defense. He stated that he had hospital tape on his face that day and in the picture on Facebook because his child's mother had accidentally kneed him in the face while they were playfully wrestling. (Apr. 13, 2016 Tr. Vol. II at 239.) He testified that on the night of the incident he was watching his child and some nieces and nephews. (Tr. Vol. II at 243.)

{¶ 8}  The state questioned Wiggins about his Facebook account and he confirmed that his user name was not the same as his real name. (Tr. Vol. II at 260.) The state then asked him if he had "a nickname out on the street." *Id.*   Defense counsel objected to the state's question about the significance of the user name on prejudice grounds. (Tr. Vol. II at 260-64.) The court overruled the objection. (Tr. Vol. II at 264.)

{¶ 9}  The state then questioned Wiggins about whether his injury had resulted from a wrestling match with his girlfriend. (Tr. Vol. II at 267.)   The state introduced

evidence that Wiggins stated on Facebook that "Daviona punched me in my shit, and got it swollen and red." (Tr. Vol. II at 268.)

{¶ 10} The state also questioned Wiggins about additional statements on his Facebook page that he was "thuggin' it," on the day in question. (Tr. Vol. II at 270.) Defense counsel did not object. He also stated that he was "turning up" that day. (Tr. Vol. II at 271.) The state asked him whether "turning up" meant getting into problems and Wiggins denied it. *Id.* Defense counsel did not object.

{¶ 11} The jury convicted Wiggins of felonious assault with a firearm specification, and having a weapon while under disability. (Jgmt. Entry at 1.) During the sentencing, the court initially sentenced Wiggins to seven years in prison: "I think I'm going to give you seven flat years to do." (Tr. Vol. II at 376.) The court then indicated that judicial release would not be available:

> No judicial release, period, end of story. You're going to do seven years.
>
> I'm writing it right on here. I fashioned the sentence on here so that even if I don't have the job, someone else can look at it, and I'm putting it on the record.

(Tr. Vol II. at 377.)

{¶ 12} There was then some dispute over whether Wiggins was properly standing for the court and the court increased his sentence:

> You're not sitting down. Sit down again, and it's going to be nine. Go ahead and sit down again. You're lucky you're only getting seven. The more I think about it, you don't get it.
>
> Mr. Speights is out here with three kids, doing his best to make everything work, working at Happy's Pizza, and you're taking a shot at him. And, you know, you're on probation for a shooting before.
>
> In fact, you're going to do eight years.

(Tr. Vol. II at 377-78.)

{¶ 13} Ultimately, the court sentenced Wiggins to five years on the felonious assault consecutive to the mandatory three-year firearm specification. The court ran all other sentences concurrent for a total eight-year prison term. (Feb. 8, 2016 Jgmt. Entry at 1-2.) The court also noted "NO JUDICIAL RELEASE" in the Judgment Entry. *Id.* at 2.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Appellant appeals, assigning the following errors:

[I.] APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

[II.] THE TRIAL COURT IMPROPERLY DENIED APPELLANT JUDICIAL RELEASE BEFORE HE COULD FILE FOR JUDICIAL RELEASE.

## III. ASSIGNMENT OF ERROR ONE—NO DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL

{¶ 15} Wiggins argues in his first assignment of error that he was denied effective assistance of counsel because his trial counsel (1) falsely promised testimony, (2) elicited testimony about the circumstances of Wiggins' eye injury, and (3) failed to object to the state's questioning about Wiggins' Facebook comments. We disagree.

{¶ 16} To establish a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Wiggins must show that (1) defense counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) defense counsel's errors prejudiced defendant. *Id.* The failure to make either showing defeats a claim of ineffectiveness of trial counsel. *Id.* at 697. In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential * * * [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *State v. Bradley,* 42 Ohio St.3d 136, 143-44 (1989).

{¶ 17} A claim of trial counsel ineffectiveness usually will be unreviewable on appeal because the appellate record is inadequate to determine whether the omitted objection, motion, or defense really had merit and/or because the possible reasons for counsel's actions appear outside the appellate record. *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir.1995) (en banc) ("Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed."; "A factual record must be developed in and addressed by the district court in the first instance for effective review."). No interlocutory remand will be allowed to develop the record. *Id.*

{¶ 18} Ohio law similarly recognizes that error cannot be recognized on appeal unless the appellate record actually supports a finding of error. A defendant claiming error has the burden of proving that error by reference to matters in the appellate record. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). "[T]here must be sufficient basis in the record * * * upon which the court can decide that error." *Hungler v. Cincinnati*, 25 Ohio St.3d 338, 342 (1986).

{¶ 19} In this case, Wiggins points to nothing in the record to support this claim. There is no reason to believe that trial counsel's promise that Pace would testify was a deliberate, false statement. Appellant testified concerning his relationship with Pace. From the testimony presented, it appears that the relationship is contentious. Given what appears to be a contentious nature to their relationship, one could easily see how Pace may have changed her mind about testifying on appellant's behalf. No matter the reason, the record on appeal does not contain an explanation for the failure to produce Pace as a witness. Because a reversal based upon a claim of ineffective assistance of counsel must be made upon the record on appeal, appellant's first argument must fail, as accepting his argument requires pure speculation.

{¶ 20} Secondly, the testimony regarding the eye injury would have been introduced during cross-examination. In essence, the Facebook posts contained statements made by appellant, so they would have been introduced during cross-examination no matter what the content of appellant's direct examination had been. Despite the result, getting appellant's explanation on the record during direct examination was sound trial strategy.

{¶ 21} Thirdly, appellant asserts that his trial counsel failed to object to questions from the trial prosecutor during cross-examination concerning the Facebook posts that appellant made, stating that he was "thuggin' it" and "turning up" in the hours leading up to the shooting. In order to succeed with this particular argument, appellant has to initially show that the objection would have been meritorious. Appellant has provided no reason to believe that the trial court would have sustained an objection based merely upon relevance grounds. Evidence of appellant's state of mind in the hours leading up to the shooting was extremely relevant. The posts contained appellant's own words and allowed for a reasonable inference regarding his state of mind and were relevant and admissible.

{¶ 22} Even assuming that counsel's representation was somehow deficient, Wiggins has not established prejudice. He has not shown a reasonable probability that the verdict would have been different. The jury still could have convicted him based upon the strength of the victim's identification, and Wiggins' weak testimony concerning his alibi. Wiggins cannot overcome the presumption that his counsel's conduct fell within the range of reasonable representation. Furthermore, Wiggins cannot show that he was prejudiced in any manner by the actions or inactions of his counsel. Therefore, he cannot establish a reasonable probability of an acquittal. As a result, Wiggins' first assignment of error is overruled.

## IV. ASSIGNMENT OF ERROR TWO—NOT RIPE

{¶ 23} Wiggins argues that the trial court was without legal authority, and improperly indicated in the sentencing entry, that judicial release would never be available. Wiggins never made a motion for judicial release, as such, it follows that the trial court could not "deny" it.

{¶ 24} This issue is not properly before this court. For a cause to be justiciable, there must exist a real controversy presenting issues which are ripe for judicial resolution and which will have a direct and immediate impact on the parties. *State ex rel. Keller v. Columbus,* 10th Dist. No. 05AP-52, 2005-Ohio-6500, ¶ 19.

{¶ 25} Only if appellant files a motion for judicial release, and only if the motion is denied on the grounds of res judicata, would his present argument become theoretically ripe for review. *See State v. Burgess,* 5th Dist. No. 1998CA00053 (Oct. 19, 1998) (indication by trial court at time of sentencing that judicial release would not be granted at any time is not ripe for review on direct appeal). Appellant's second assignment of error is not ripe for review and is overruled.

## V. DISPOSITION

{¶ 26} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and LUPER SHUSTER, JJ., concur.

_____