[Cite as *Thevenin v. White Castle Mgt. Co.*, 2016-Ohio-1235.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Victor A. Thevenin, | : | |
| Plaintiff-Appellant, | : | No. 15AP-204 |
| v. | : | (C.P.C. No. 13CV-11789) |
| White Castle Management Co., | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 24, 2016

**On brief:** *Livorno and Arnett Co., LPA*, and *Henry A. Arnett*, for appellant. **Argued:** *Henry A. Arnett*

**On brief:** *Porter, Wright, Morris & Arthur LLP, Diane C. Reichwein*, and *Jamie A. LaPlante*, for appellee. **Argued:** Diane C. Reichwein

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Plaintiff-appellant, Victor A. Thevenin, ("appellant") appeals from a final judgment of the Franklin County Court of Common Pleas that struck portions of his affidavit and the attached exhibits, and then granted summary judgment to defendant-appellee, White Castle Management Company ("White Castle"). We conclude that the trial court erred when it failed to consider appellant's evidence in ruling on White Castle's motion for summary judgment. Therefore, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant worked as a watchman for White Castle for several years until his termination on May 1, 2013. His job included securing the building by performing hourly scheduled security checks or rounds of the building and grounds. On November 29, 2012,

appellant sustained a knee injury at work and subsequently filed a claim with the Ohio Bureau of Workers Compensation ("BWC") for the injury.

{¶ 3}  On December 20, 2012, appellant's doctor referred appellant to an orthopedist.  On January 16, 2013, the orthopedist diagnosed a medial meniscus tear and restricted appellant from working from December 28, 2012 until March 18, 2013.  Two days later, on January 18, 2013, White Castle informed appellant that he qualified to participate in their "Modified Duty Off-Site Program" to work at a local non-profit organization in order to accommodate his work restrictions.  White Castle scheduled him to begin working on January 22, 2013.  Appellant then filed a BWC complaint alleging that White Castle was not respecting his medical restrictions.  After receiving a letter from appellant's doctor removing him from all work, White Castle did not require appellant to work at the non-profit organization.

{¶ 4}  On February 5, 2013, the BWC wrote a letter to appellant informing him that the "Self-Insured Complaint Resolution Unit" investigated his complaint and concluded that "no apparent rules were violated by the employer" and "[t]herefore, the complaint is invalid."

{¶ 5}  On March 6, 2013, appellant's doctor permitted appellant to return to work with his "only restriction [being] that he is only to walk 3 hrs. per 8 hr. shift."  The doctor indicated that walking should occur for 3 hours "with breaks."  On March 18, 2013, appellant returned to work and worked a shift with his immediate supervisor in order for his supervisor to observe the length of time necessary for appellant to complete a round. A round included an hourly security check of portions of the building.  Appellant's supervisor recorded an average 34.4 minutes per round.

{¶ 6}  On March 25, 2013, appellant's supervisor emailed him a work schedule to accommodate appellant's 3-hour walking restriction.  This schedule shortened each of appellant's shifts to a maximum of 7.75 hours and shortened one shift to 5.5 hours, reducing appellant's work hours below 40 hours per week.  Additionally, the schedule required appellant to complete 5 rounds within a 4-hour window on each of the nights when he worked.  Prior to his injury, appellant worked 40 hours per week in 5 eight-hour shifts.

{¶ 7} On April 4, 2013, White Castle conducted appellant's performance appraisal and he received low marks for cooperation with management, but overall met expectations. On April 8, 2013, appellant's doctor clarified appellant's restrictions by explaining that appellant's restriction of 3 hours of walking in an 8-hour period meant that appellant could "walk 30 mins @ a time with a 45 min rest period." White Castle responded to the doctor's clarification with a letter on April 19, 2013 providing a new 8-hour per day shift with six 30-minute rounds on one day and five 30-minute rounds on the other four days beginning April 28, 2013. White Castle advised appellant that, if any issue arose requiring him to violate his medical restrictions he should report it to the building maintenance department. It also informed him, "[a]s with all watchmen, properly addressing building issues takes precedence."

{¶ 8} The morning after his April 28, 2013 shift, at 8:08 a.m., appellant sent an email to his supervisor and a member of the White Castle management team reporting that he had violated his restrictions. His email explained that because of the sentence in the April 19, 2013 letter stating, "[b]uilding requirements take precedence,"[1] each of his rounds took 45 minutes, resulting in a total of 4.5 hours of walking during his shift. At 11:47 p.m., on the same day, appellant sent another email to White Castle reminding White Castle that rounds take longer than 30 minutes and alleging that White Castle made no effort to accommodate his injury by adjusting the requirements of the rounds or providing him with a way to complete them faster.

{¶ 9} On April 29, 2013, a representative from team member services at White Castle telephoned and notified appellant that he was suspended. Later that day, appellant prepared a second BWC complaint. On May 1, 2013, a member of management at White Castle wrote appellant informing him that his employment was terminated because of a violation of his medical restrictions and insubordination.

{¶ 10} On October 25, 2013, appellant filed suit in the Franklin County Court of Common Pleas alleging that White Castle had taken retaliatory and discriminatory action

---

[1] The April 19, 2013 letter used the word "issues" rather than requirements.

against him.  Specifically, he alleged that because of his BWC claim, White Castle had reduced his hours, assigned him to a less desirable shift, and failed to adjust his schedule to comply with medical work restrictions imposed by his doctor to aid the healing of his knee injury.

{¶ 11} On November 14, 2014, White Castle moved for summary judgment and attached numerous exhibits, including exhibits used during appellant's deposition.  On December 1, 2014, appellant filed a memorandum contra to White Castle's motion for summary judgment.  In opposing White Castle's summary judgment motion, appellant filed an affidavit with a 62-page appendix of exhibits and a table of contents for the exhibits.  The affidavit read, in pertinent part:

> Victor Thevenin, the Plaintiff in Case # 2013-CV-017789, being first duly sworn, states as follows.
>
> 1. This affidavit is based upon his personal knowledge and he is competent to testify to the matters stated herein. Attached to this affidavit is an appendix with true and accurate copies of documents relating to Plaintiff's employment with White Castle.

The appendix contained 26 documents that appear in the record before this court.

{¶ 12} On December 15, 2014, White Castle moved to strike the table of contents and every document in the appendix because they were "unsworn, uncertified, and unauthenticated by Plaintiff."  Additionally, White Castle moved to strike paragraphs 3-5, 8-21, and 23 of the affidavit itself on the grounds that they "contain inadmissible evidence and/or describe (often argumentatively) unsworn and uncertified documents."  White Castle also sought to strike pages 5-7 of the affidavit because they contain "unsworn descriptions of the various documents in the 'appendix' to Plaintiff's Affidavit."

{¶ 13} On December 29, 2014, appellant opposed the motion to strike, arguing that he had sworn that he had personal knowledge, was competent to testify, and that he had attached copies of all relevant documents to the affidavit with a statement that the copies were true copies.  On December 31, 2014 White Castle replied, arguing that when the facts indicate a lack of personal knowledge on the part of an affiant, a conclusory averment does not suffice.

{¶ 14} On February 24, 2015, the trial court granted White Castle's motion to strike and, based on the record that existed after striking appellant's evidence, granted White Castle's motion for summary judgment. Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 15} Appellant assigned two errors for our review:

> ASSIGNMENT OF ERROR NO. 1
>
> The Court of Common Pleas erred by granting Defendant White Castle Management Co.'s Motion to Strike Portions of Plaintiff Victor Thevenin's Affidavit Submitted in Support of His Memorandum Contra to Defendant's Motion for Summary Judgment Filed on December 15, 2014.
>
> ASSIGNMENT OF ERROR NO. 2
>
> The Court of Common Pleas erred by granting Defendant White Castle Management Co.'s Motion for Summary Judgment Filed on November 14, 2014.

## III. DISCUSSION

### A. First Assignment of Error – Whether the Trial Court Properly Struck Portions of Appellant's Affidavit and All Records Attached to It

{¶ 16} By his first assignment of error, appellant contends that the trial court erred in granting White Castle's motion to strike portions of his affidavit and the appendix documents that he submitted in support of his memorandum contra to White Castle's motion for summary judgment. We agree.

{¶ 17} We review discovery issues on appeal under an abuse of discretion standard. *Jacobs v. Jones*, 10th Dist. No. 10AP-930, 2011-Ohio-3313, ¶ 55, citing *State ex rel. Keller v. Columbus*, 164 Ohio App.3d 648, 2005-Ohio-6500, ¶ 39 (10th Dist.), citing *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998). With regards to whether the trial court erred by striking portions of an affidavit on summary judgment we have previously held that:

> The decision to admit or exclude evidence, including affidavit testimony, is subject to review under an abuse of discretion standard, and absent a clear showing that the court abused its discretion in a manner that materially prejudices a party, we

> will not disturb the trial court's ruling. *Boggs v. The Scotts Co.*, 10th Dist. No. 04AP-425, 2005-Ohio-1264, ¶ 35, citing *Sidenstricker v. Miller Pavement Maintenance, Inc.*, 158 Ohio App.3d 356, 2004-Ohio-4653, ¶ 23, 815 N.E.2d 736, and *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 65, 567 N.E.2d 1291; *Asset Acceptance, L.L.C. v. Rees*, 10th Dist. No. 05AP-388, 2006-Ohio-794, ¶ 10. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

*Carter v. U-Haul Internatl.*, 10th Dist. No. 09AP-310, 2009-Ohio-5358, ¶ 9.

{¶ 18} In its decision, the trial court stated, "Plaintiff filed a four-page affidavit in conjunction with his Memorandum Contra, to which he attached a 3-page 'Appendix' referencing several documents." The trial court continued, "The affidavit does not identify how many documents are encompassed by the Appendix, nor does it 'specifically identify any documents by exhibit letter or number' " (quoting *Huntington Natl. Bank v. Legard*, 9th Dist. No. 03CA008285, 2004-Ohio-323, ¶ 9). The trial court further remarked that, "[p]laintiff cannot authenticate any documents listed in the Appendix that were sent to or received by Plaintiff in the course of his employment with White Castle, unless he personally created the documents, he was the custodian of the documents, or he was required to maintain the documents as a part of his job duties." Further, "[e]ven if Plaintiff *could* establish personal knowledge of the documents listed in the Appendix, he failed to properly attach the documents to, and reference them within, the body of the actual affidavit as required by Civ. R. 56(E)." The trial court concluded, "Plaintiff * * * did *not* in fact attach all 62 pages of the documents to the affidavit. Plaintiff attached what he refers to as 'just...a table of contents.' " (Emphasis sic.)

{¶ 19} Civ.R. 56(C) provides, as follows:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶ 20} The trial court can consider documents other than those of the type listed in Civ.R. 56(C), even if not properly introduced, if there is no objection. *Open Container,*

*Ltd. v. CB Richard Ellis, Inc.*, 10th Dist. No. 14AP-133, 2015-Ohio-85, ¶ 11. However, "[t]he proper procedure for introducing evidentiary matter of a type not listed in Civ.R. 56(C) is to incorporate the material by reference into a properly framed affidavit." *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 23. Civ.R. 56(E) provides, as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit.

{¶ 21} Additionally, this court has stated in *Guernsey Bank v. Milano Sports Ents.*, 177 Ohio App.3d 314, 2008-Ohio-2420, ¶ 59 (10th Dist.), as follows:

> When ruling upon a motion for summary judgment, a trial court only considers admissible evidence. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 631, fn. 4, ("Only facts which would be admissible in evidence can be * * * relied upon by the trial court when ruling upon a motion for summary judgment."); *Nationwide Life Ins. Co. v. Kallberg, Lorain App. No.* 06CA008968, 2007-Ohio-2041, at ¶ 20; *Molnar v. Klammer*, Lake App. No. 2004 L 072 CA, 2005-Ohio-6905, at ¶ 65; *Brady-Fray v. Toledo Edison Co., Lucas App. No.* L-02-1260, 2003-Ohio-3422, at ¶ 30.

{¶ 22} If materials are properly submitted, the Supreme Court of Ohio has held that it is reversible error for the trial court to fail to consider them:

> Civ.R. 56(C) places a mandatory duty on a trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment. The failure of a trial court to comply with this requirement constitutes reversible error.

*Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992), syllabus.

{¶ 23} In this case, the record before us is not consistent with the trial court's conclusion that appellant failed to properly attach documents to his affidavit in response to White Castle's motion for summary judgment. Appellant's affidavit was attached to his memorandum contra White Castle's motion for summary judgment along with a table of

contents and all 62 pages of appendix documents. Moreover, appellant described the documents as "true and accurate copies of documents relating to Plaintiff's employment with White Castle," and throughout his affidavit referred to the appendix materials by appendix page number in almost every numbered paragraph of the affidavit itself. The pages of appellant's appendix are numbered 1 through 62. The affidavit mentions each page of the appendix specifically, except for pages 12 through 17. Pages 12 through 17 are attached pages to appellant's SI-28 (BWC-7228) form that contains his handwritten complaint to BWC, and includes the notation, "see attachments" under the section entitled, "[p]lease state your concern below and attach supporting documents as needed." Appellant stated in his affidavit that the affidavit is based on his personal knowledge and that the documents contained in the exhibit are "true and accurate copies of documents relating to Plaintiff's employment with White Castle." Throughout his affidavit, appellant referred to the documents in the appendix with wording such as, "shows that," "indicating," and "was indicated." Moreover, some of the documents in appellant's appendix also appeared in White Castle's exhibits, such as appellant's email to White Castle on April 28, 2013 at 11:48 p.m., and doctor reports. Because the appendix documents were included with appellant's affidavit, the trial court abused its discretion and erred when it granted White Castle's motion to strike.

{¶ 24} Nevertheless, White Castle argues that the trial court did not err in striking the documents and portions of appellant's affidavit because appellant is not able to properly authenticate the documents attached to his affidavit. We disagree.

{¶ 25} Authenticity can be established by any "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). Evid.R. 901(B)(1) provides that testimony by a witness with knowledge is an example of establishing authenticity. We recognize that "[i]f the affiant[] lacks personal knowledge of the records attached to his or her affidavit, the affiant has not properly authenticated the records." *Thompson v. Hayes*, 10th Dist. No. 05AP-476, 2006-Ohio-6000, ¶ 105, citing *Burton v. Triplett*, 10th Dist. No. 01AP-357, 2002-Ohio-580. However, it is apparent from the face of many of the documents attached to the appellant's affidavit that appellant was the author or original recipient of the document in question. Thus, appellant could authenticate documents he prepared or received.

{¶ 26} Moreover, because the trial court mistakenly believed that appellant failed to attach the documents at issue to his affidavit, the trial court did not review the documents. Without reviewing the documents, the trial court could not assess whether they were properly authenticated by appellant. Therefore, the trial court abused its discretion when it granted White Castle's motion to strike portions of appellant's affidavit based upon the appellant's purported inability to authenticate documents in the appendix.[2]

{¶ 27} Finally, White Castle argues that the trial court properly struck appellant's affidavit because it was self-serving. (White Castle's brief, at 22.) The Supreme Court of Ohio has recognized that a "sham affidavit" that contradicts former deposition testimony cannot create a genuine issue of fact sufficient to defeat a motion for summary judgment without an explanation. *Pettiford v. Aggarwal*, 126 Ohio St.3d 413, 2010-Ohio-3237, ¶ 1, fn. 1, syllabus; *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, paragraph three of the syllabus. This court has also recognized that "unsupported and self-serving assertions" in an affidavit that amount to "nothing more than bare contradictions of the evidence offered by the moving party" can be insufficient to withstand summary judgment. *White v. Sears*, 10th Dist. No. 10AP-294, 2011-Ohio-204, ¶ 8, quoting *Bell v. Beightler*, 10th Dist. No. 02AP-569, 2003-Ohio-88, ¶ 33. Here, however, appellant's affidavit is neither a "sham affidavit" nor is it completely unsupported. The appendix documents were included because they allegedly support statements in appellant's affidavit. It is also apparent that appellant has first hand knowledge of at least many of the events that form the basis of his legal claims. Therefore, we reject White Castle's contention that appellant's affidavit should be stricken because it is self-serving.

{¶ 28} For the foregoing reasons, we sustain appellant's first assignment of error, finding that the trial court erred when it granted White Castle's motion to strike the appendix and portions of appellant's affidavit.

---

[2] We also note that some of the documents attached to appellant's affidavit were exhibits used during his deposition, which were part of the record before the trial court.

**B. Second Assignment of Error—Whether Trial Court Should have Granted White Castle's Motion for Summary Judgment**

{¶ 29} By his second assignment of error, appellant contends that the trial court erred in granting White Castle's motion for summary judgment. We agree.

{¶ 30} In granting White Castle's motion for summary judgment, the trial court did not consider the 62 pages of documents appellant attached to his affidavit. We have already determined that the trial court erred in striking the appendix attached to appellant's affidavit and portions of the affidavit. The Supreme Court of Ohio held in *Murphy* that, if evidentiary materials are properly submitted by the nonmoving party in opposition to a motion for summary judgment, the trial court errs if it grants summary judgment without considering the evidentiary material. *See Murphy* at syllabus; Civ.R. 56(C). Thus, the trial court erred in granting White Castle's motion for summary judgment without considering appellant's evidentiary materials. Appellant's second assignment of error is sustained.

## IV. CONCLUSION

{¶ 31} Having sustained appellant's two assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this cause for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed; cause remanded.*

SADLER and BRUNNER, JJ., concur.

———————————

BRUNNER, J., concurring.

## I. Introduction

{¶ 32} I concur with the decision of the majority but write separately to expand the majority's discussion on discovery and the substantive issues relating to the trial court's granting of summary judgment, since our review is de novo.

{¶ 33} Consistent with the majority's decision, I concur that the trial courterred when it determined that Thevenin had failed to attach or incorporate the documents

referenced and identified in his affidavit.[3]  Consistent with the majority, I also agree that the trial court erred in striking and failing to consider the affidavit appendix as well as the portions of the affidavit that referenced those materials.  Based on *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992), syllabus, construing Civ.R. 56(C), if materials are properly submitted it is per se error for the trial court to fail to consider them. The majority has sustained both assignments of error for these reasons, and I concur with these reasons.

{¶ 34} However, I would not stop there. On behalf of the trial court, the visiting judge went beyond an apparent mistake of circumstances (in that the copy of Thevenin's affidavit he reviewed did not contain the referenced exhibits). The trial court concluded as a matter of law that, even if the documents attached to Thevenin's affidavit were available, much, if not all of them, were subject to exclusion on an evidentiary review for lack of personal knowledge. This should not go unaddressed.

## II. Discovery Issues

{¶ 35} As noted by the majority, discovery issues on appeal are reviewed under an abuse of discretion standard. *Jacobs v. Jones*, 10th Dist. No. 10AP-930, 2011-Ohio-3313, ¶ 55, citing *State ex rel. Keller v. Columbus*, 164 Ohio App.3d 648, 2005-Ohio-6500, 39, citing *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998). The majority quotes *Carter v. U-Haul Internatl.*, 10th Dist. No. 09AP-310, 2009-Ohio-5358, ¶ 9 in addition to *Murphy* in finding that the trial court abused its discretion in striking Thevenin's affidavit.

{¶ 36} While the trial court apparently did not examine the documents in question, (since, in the copy of Thevenin's affidavit reviewed by the trial court, they were not attached to the affidavit), to hold that the affidavit and its accompanying documents were not based on personal knowledge without having reviewed these documents in the context of Thevenin's affidavit is unreasonable, arbitrary and unconscionable and an abuse of discretion that should be reversed on that basis. *Carter.*

---

[3] Although the caption of the order incorrectly indicates that it was issued by Judge Timothy S. Horton (who was, at the time the order was issued, a judge on this court of appeals); the signature page of the order correctly reflects that the trial judge who issued the order was Judge John P. Bessey.

{¶ 37} In *Bush v. Dictaphone Corp.*, 10th Dist. No. 00AP-1117, 2003-Ohio-883, ¶ 72-73, this court considered the contention that an affiant lacked personal knowledge in the context of a challenge to the personal knowledge of representatives of an employer in an employment dispute and held:

> Evid.R. 602 requires lay witnesses to have personal knowledge of the matters about which they testify. Similarly, Civ.R. 56(E) requires that affidavits filed in support of or in opposition to summary judgment must be made on personal knowledge. *State ex rel Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 223, 1994-Ohio-92, 631 N.E.2d 150. "Personal knowledge" has been defined as "knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said." *Black's Law Dictionary* (7 Ed.Rev.1999) 877. In *Brannon v. Rinzler* (1991), 77 Ohio App.3d 749, 756, 603 N.E.2d 1049, the court defined "personal knowledge" as "knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay. * * *" An affidavit without an averment of personal knowledge must demonstrate personal knowledge specifically. *Equitable Assurance Corp. v. Kuss Corp.* (1984), 17 Ohio App.3d 136, 138, 17 Ohio B. 235, 477 N.E.2d 1193.
>
> [I]t has been held that, personal knowledge may also be inferred from the contents of an affidavit. *Beneficial Mortgage Co. v. Grover* (June 2, 1983), Seneca App. No. 13-82-41, 1983 Ohio App. LEXIS 13383. In that case, the court inferred than an affiant had personal knowledge of the facts contained in his affidavit where he stated that he was the manager of the bank that issued the note in question, that he had direct supervision of payments on the note and custody of all records respecting it, and where his signature appeared on the note as a witness.
>
> [W]e find that personal knowledge may be inferred from the contents of the challenged affidavits.
>
> In our view, the nature of the facts contained within these affidavits, together with the identity of the affiants and their admitted involvement in the employment actions taken against plaintiff, creates a reasonable inference that the affiants had personal knowledge of the facts contained therein. Accordingly, we conclude that personal knowledge

> may be inferred from the contents of the affidavits, and the
> trial court did not err in considering them in deciding the
> motion for summary judgment.

*Bush* at 72-75. In *Bush*, we inferred personal knowledge from the facts and circumstances contained in the affidavits of the individuals who made them.

{¶ 38} Thevenin is more than an employee in a company whose testimony is offered to defend the company's position in litigation. He is a party to this litigation. He knows what he knew leading up to the litigation, and as discovery proceeded, he learned more. That he learned it through documents produced by the company does not diminish his personal knowledge. Throughout Thevenin's affidavit, he referred to the various documents in the affidavit's appendix in making his case for the existence of a material issue of fact in opposition to summary judgment. To the extent as a lay person he has drawn conclusions, the trial court is free to disregard, since Civ.R. 56 concerns material issues of fact. Civ.R. 56.

{¶ 39} I would also consider our decision in *Home S & L., Co. v. Eichenberger*, 10th Dist. No. 12AP-1, 2012-Ohio-5662, ¶ 18-19, and note that, unlike the affiant in *Eichenberger* who could provide documents that supported the fact that his payments increased, but did not have personal knowledge to set forth the reason why, Thevenin provides documents that he and his counsel obtained in discovery and relates them to what he personally knows.

{¶ 40} I would contrast Thevenin's affidavit to one reviewed in *Fischer v. Sciotto*, 10th Dist. No. 95APE04-4901 (Oct. 24, 1995), wherein the affidavit contradicted previous testimony, creating a new argument or cause of action. In that case, the appellant contradicted his previous testimony, offering that he observed in documents produced in discovery that handwritten notes had been made on the back of his resume by his employer. For the first time, in opposing summary judgment, he claimed that this fact created an employment contract with his employer. We reiterated our holding in an earlier decision that, where "an affidavit squarely conflicts with an affiant's prior statement, it would be unjust to consider the affidavit absent an explanation for the

discrepancy." *Id.* at 8, citing *Jones v. Hoisington,* 10th Dist. No. 87AP-570, (Feb. 2, 1988).[4]

{¶ 41} As to the documents attached to Thevenin's affidavit, the majority discussed to some degree the viability of documents attached to and referenced in Thevenin's affidavit under the requirements of Civ.R. 56(C). But the majority did not discuss the discovery associated with the trial court's decision to strike Thevenin's affidavit for both procedural and substantive reasons.

{¶ 42} Having discussed the issue of personal knowledge, there remains the issue of documents identified in Thevenin's affidavit that were neither authored nor received by him other than in the litigation and which were not found elsewhere in the trial court record. They are (1) an October 1999 description of a watchman job from the Porcelain Steel Buildings Company, (2) a chart of other watchmen employed by White Castle showing dates of hire, disciplinary actions, and overall performance appraisals for 2010-12, (3) a February 1, 2013, response to Thevenin's Ohio Bureau of Workers' Compensation ("BWC") complaint from KKSG & Associates, Inc., a workers' compensation claims and actuarial services company authorized to respond on behalf of White Castle, (4) a May 14, 2013, response to Thevenin's BWC complaint from KKSG & Associates, Inc., a workers' compensation claims and actuarial services company authorized to respond on behalf of White Castle, and (5) a July 16, 2013, notice from Thevenin's attorney to a member of White Castle's management that the termination and events leading up to it violate R.C. 4123.90.

{¶ 43} The record indicates that the first four of the five documents listed above were available to Thevenin in responding to summary judgment, because his counsel received them in discovery from White Castle. This poses a problem for White Castle's suggestion that these records may not be authentic. The trial court recognized that the mere receipt of a document in discovery does not automatically render it admissible.

---

[4] The discrepancy was explained by stating that appellant could not possibly remember every detail of every conversation he had with his employer's representative. "Appellant stated that at the time of his deposition, he was unaware a written agreement existed and only became aware of it after the document was produced in January 1995." *Fischer* at 8-9.

However, Civ.R. 26(E)(2) imposes a duty to supplement discovery responses that a party "knows or later learns" are "incorrect." When a party that is either the creator or custodian of a document surrendered in discovery (as White Castle apparently is for these documents), Civ.R. 26 requires that if it is "incorrect" (not a true and accurate copy), supplemental, correct discovery must be provided. Thus, there is a lack of consistency in White Castle's suggestion that the documents in question may not be authentic while simultaneously not supplementing discovery responses with true and accurate copies.

{¶ 44} Thevenin, in his affidavit, did not specify how he, personally, came into possession of these documents, but he did specify that, they were "true and accurate copies of documents relating to Plaintiff's employment with White Castle" and his affidavit testimony clearly indicates that he has reviewed these documents and understands them. ( Thevenin Affidavit, 1.)

{¶ 45} The approach taken by White Castle in asking the trial court to strike documents it produced in discovery, based on a talismanic assertion that the affiant does not have personal knowledge about them (when they in fact concern the affiant's employment with White Castle) is not helpful to the efficient administration of justice. The goal of a motion for summary judgment is to narrow the issues in a case to determine which, if any, should go to trial. " 'The purpose of summary judgment is not to try issues of fact, but is, rather, to determine whether triable issues of fact exist.' " *State ex rel. Anderson v. The Village of Obetz*, 10th Dist. No. 06AP-1030, 2008-Ohio-4064, ¶ 64, quoting *Lakota Local School Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 643 (1996) (citations omitted.)

{¶ 46} The fact that Thevenin's affidavit did not specifically state that he or his counsel received the documents in the appendix of his affidavit in discovery should not signal the death knell to Thevenin's attempt to satisfy his reciprocal burden under Civ.R. 56 to produce evidence in response to a motion for summary judgment for demonstrating that a material issue of fact exists for trial. *See Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996); *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11. Relying on the role of both counsel who are obligated to observe the rules of discovery, (*see also Ohio v. Crofters, Inc.*, 75 F.R.D. 12, 21 (Colo. 1977), *aff'd*, *Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370 (10th Cir.1978), *cert. denied*, *Arthur Andersen & Co. v.*

*Ohio*, 439 U.S. 833, (1978)), the trial court could rely on the documents' authenticity based on the discovery rules presented in Civ.R. 26, absent evidence that Thevenin has not been truthful in his affidavit. Implicit in this is the understanding that Thevenin would have received the documents referenced in his affidavit from his counsel as his counsel received them from White Castle's counsel in discovery.

{¶ 47} Thevenin is the individual, the employee, involved in this dispute concerning White Castle's termination of his employment. He is therefore competent to testify that the exhibits produced by White Castle in response to the rules of discovery in the dispute that is at the heart of his claim are true and accurate as to the form in which he received them. Moreover, Thevenin specifically stated in his affidavit, "This affidavit is based upon his personal knowledge" and that the documents in the appendix are "true and accurate copies of documents relating to Plaintiff's employment with White Castle." (Thevenin Affidavit, 1.)

{¶ 48} Finally, White Castle is not arguing that the documents used by Thevenin are not the most accurate or up-to-date version of such documents.[5] White Castle is simply attempting to have the trial court's judgment affirmed excluding Thevenin's affidavit so as to expeditiously defeat Thevenin's claims through summary judgment rather than through fully aired and adjudicated claims. This is not consistent with the stated purpose of summary judgment. *Anderson* at 64; *see also Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy*, stating that "'[t]rial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party."

---

[5] Even in such as case, whether stale documents are excluded depends on other evidence in the case. *Federated Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App.3d 366, 396-97, (10th Dist.2000), "Appellee contends the trial court's order should be affirmed because the prospectus was stale and superseded, was contradicted by subsequent disclosures and was not justifiably relied upon by appellants. Appellants contend there is evidence disputing appellee's contentions. * * * Here, there was evidence that appellants actually relied on the prospectus when making after-market purchases. * * * Construing the evidence most strongly in favor of appellants, * * * the trial court erred in barring all claims * * * on the basis a reasonable juror could not conclude the information contained in the prospectus was material."

## III. De Novo Review of Summary Judgment

{¶ 49} Additionally going beyond the majority's rationale, I would substantively examine whether summary judgment was appropriate. When reviewing a trial court's decision on summary judgment, our review is de novo, and we therefore apply the same standards as the trial court. *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 12; *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24. Because of this de novo review, I would find that there exists a genuine issue of material fact as to whether "a causal link existed between" Thevenin's BWC activities and his suspension and firing. *White v. Mount Carmel Med. Ctr.*, 150 Ohio App.3d 316, 2002-Ohio-6446, ¶ 37.

{¶ 50} The essence of Thevenin's case is retaliatory discharge under R.C. 4123.90 which provides in relevant part:

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

{¶ 51} We have previously explained the burdens upon the parties and the process a court must employ when considering such claims:

> To support a claim for retaliatory discharge, a plaintiff must show that: (1) she engaged in a protected activity; (2) she was the subject of an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. See *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div.* (1994), 99 Ohio App.3d 396, 650 N.E.2d 950, citing *Jackson v. RKO Bottlers of Toledo, Inc.* (C.A.6, 1984), 743 F.2d 370, 375. If the plaintiff meets her initial burden in establishing a prima facie case, then the burden shifts to the defendant to give a legitimate nondiscriminatory reason for the action. See *id.*, citing *Burrus v. United Tel. Co.* (C.A.10, 1982), 683 F.2d 339, 343. If the defendant gives a nondiscriminatory reason, then the plaintiff must show that the articulated reason was only a pretext for the adverse action. *See id.* This court has applied the foregoing analysis to R.C. 4123.90 claims. *Oliver v. Wal-Mart Stores, Inc.*, Franklin App. No. 02AP-229, 2002 Ohio 5005; *Sidenstricker* [*v. Miller*

> *Pavement Maintenance, Inc.,* 10th Dist. No. 00AP-1146, (Oct. 25, 2001).]

*Id.* at ¶37. Notwithstanding the burden shifting framework through which a court evaluates the merits of retaliation cases, as the movant seeking summary judgment, White Castle retains the burden to show that there is "no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10.

{¶ 52} The burden of showing that no genuine issue of material fact exists falls upon the party who files for summary judgment. *Dresher v. Burt,* 75 Ohio St.3d 280, 294, (1996). *Byrd* at 12; *see also e.g., Esber Beverage Co. v. Labatt United States Operating Co., L.L.C.,* 138 Ohio St.3d 71, 2013-Ohio-4544, ¶ 9. The Supreme Court of Ohio has also discussed in detail the relative burdens of the movant and nonmovant:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher* at 293. In deciding summary judgment, the trial court must give the nonmoving party "the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material facts." *Byrd* at 25.

{¶ 53} There is no question that Thevenin engaged in protected activity when he pursued a BWC claim with his self-insured employer, White Castle. *See e.g., Roseborough v. N.L. Industries*, 10 Ohio St.3d 142 (1984), syllabus. There is also no question that Thevenin engaged in additional protected activity when he filed BWC complaints as he did on January 27 and April 29, 2013.[6] Nor is there any doubt that Thevenin was the subject of adverse employment action when he was fired on May 1, 2013. Thus, the issues that remain are whether there was a causal link between the protected activity and firing, whether, if there was, White Castle nonetheless had a nondiscriminatory reason to fire Thevenin, and whether, even if White Castle had a nondiscriminatory reason, that reason was merely a pretext. In addition, because this case is a summary judgment case, overlying the claim analysis, there is the question of whether White Castle has shown that it is entitled to judgment as a matter of law in the absence of genuine issues of material fact based on the record that exists after the proper disposition of the motion to strike.

{¶ 54} I would conclude that the record, when drawing all inferences in favor of Thevenin, presents material factual issues for a jury about White Castle's treatment of Thevenin with regard to his injury and his BWC claim and complaints. For example, on January 16, 2013, Thevenin was entirely prohibited from working by his doctor. But, on January 18, 2013, even though Thevenin was prohibited from working and had filed BWC claim No. 12-862342, White Castle attempted to schedule Thevenin to work at the Salvation Army on January 22, 2013. This prompted Thevenin's first BWC complaint on January 27, 2013.

{¶ 55} Approximately a month after Thevenin filed his BWC complaint regarding White Castle's poor response to his workplace injury, Thevenin's doctor permitted him to return to work with the restriction that he not walk more than 3 hours (with breaks) in an 8 hour period. White Castle responded by having Thevenin's supervisor join him on a shift to determine how long it took Thevenin to complete a round with his bad knee-approximately 35 minutes. White Castle then scheduled Thevenin for shifts shorter than 8

---

[6] It is not entirely clear from the record that Thevenin filed his second complaint on April 29, 2013. That is the date on all the documents in the complaint, but a fax header shows it was faxed to the BWC in May 2013.

hours in which he would still be expected to complete 5 rounds. While, at 35 minutes each, these rounds would have taken approximately 3 hours to complete, this new schedule resulted in a reduction of hours (and hence pay) for Thevenin and, moreover, pushed the limits of his doctor's written restrictions. Three hours of walking with breaks in a 5-hour period is simply not the same as 3 hours of walking in an 8-hour period because the breaks of the former will, of necessity, be either fewer or shorter.

{¶ 56} When, on March 6, 2013, Thevenin obtained a clarification from his doctor that 3 hours of walking with breaks in 8 hours entails 30-minute walking intervals with 45-minute rest periods, White Castle again failed to appropriately respond. White Castle issued Thevenin a schedule which set out an 8-hour shift with five or six 30-minute rounds. This would, at first blush, appear to comply with Thevenin's restrictions. However, White Castle issued this schedule after Thevenin's supervisor had joined Thevenin on a shift and knew that rounds could not be completed in 30 minutes. Though White Castle's brief suggests that Thevenin should have simply ceased his rounds without completing them if he was going to take more than 30 minutes to complete any of them, White Castle's letter to Thevenin suggests otherwise. It speaks in terms of "rounds" not "partial rounds" or "as much of a round as can be completed in 30 minutes." Moreover, it explained that "[a]s with all watchmen, properly addressing building issues takes precedence." (Thevenin Affidavit, at 40.) Reading this language in context and drawing inferences in Thevenin's favor, it is reasonable to conclude that White Castle knowingly scheduled Thevenin for more walking than his restrictions allowed and then attempted to mask that fact by labeling each scheduled round as "30 minutes" despite knowledge through Thevenin's supervisor that rounds took longer than that. The only language that suggests a round could be left unfinished is the paragraph which reminds Thevenin:

> Please remember that it is your responsibility to monitor your walking periods in order to remain in compliance with your restrictions. A log sheet will be provided to assist in tracking those times and the areas needed to be covered in the next scheduled round.

(Thevenin Affidavit, at 40.) However, White Castle did not provide the log sheet as promised. Drawing inferences from these facts in favor of the nonmoving party, Thevenin, this letter could be construed by a jury as nothing more than an attempt to mask the fact

that White Castle was demanding the impossible–that Thevenin complete rounds within his restricted walking time which could not be completed within that time.

{¶ 57} Following his first day back at work on April 28, 2013, Thevenin notified White Castle within minutes of completing his shift that he had been unable to complete the requisite number of rounds within his restrictions and, accordingly, had violated his restrictions. This was in accordance with White Castle's letter which stated, "[a]ny issues that would cause you to exceed the established restrictions must be reported to the Building Maintenance Department." (Thevenin Affidavit, at 40.) In an e-mail later that same day and another the following day, Thevenin pointed out that it was impossible to complete the requisite rounds and comply with the restrictions at the same time. Later on April 29, 2013, a representative from White Castle telephoned Thevenin and informed him that he had been suspended for violating restrictions imposed by his doctor. After the phone call, Thevenin prepared a second BWC complaint. Two days later, on May 1, 2013, White Castle terminated Thevenin for the stated reason that he had violated his medical restrictions and been insubordinate. In other words, the evidence shows that Thevenin was given a choice to either fail to perform at work (for which he might have been fired) or violate his restrictions (for which he was, in fact, fired). When drawing all inferences in favor of the nonmoving employee, putting an injured employee who has filed a BWC claim in a position that either choice he makes is the wrong choice and then firing the employee for making the wrong choice, raises a genuine question as to whether "a causal link existed between the protected activity and the adverse action." *White* at ¶37.

{¶ 58} Thus, "the burden [now] shifts to [White Castle] to give a legitimate nondiscriminatory reason for the [firing]." *Id.* White Castle does not argue that Thevenin was a poor employee or advance any motivation for firing Thevenin that is unconnected to his demands to be accommodated and the attitude with which he met White Castle's repeated failure to abide by the restrictions put in place by his doctors. We note that, in the last performance evaluation Thevenin received before being fired, the only "below expectations" scores on the evaluation were that Thevenin was being uncooperative with his supervisor and the department and that he injured himself on the job (because, the evaluation alleges, he was not carrying a flashlight). (Thevenin Affidavit, at 33-34.) The closest White Castle comes to advancing a non-discriminatory motivation for firing

Thevenin is White Castle's evidentiary submissions which show that Thevenin had argued with his superiors for a number of years on the topic of weekend scheduling. However, when drawing all inferences in favor of Thevenin, this supports Thevenin's position more than White Castle's. That is, Thevenin had complained for years about his schedule and had never been suspended or fired. But soon after he became injured and filed a BWC claim and a pair of complaints, he was first suspended and then fired. When considering all the evidence properly in the record and drawing all inferences in favor of Thevenin, the case presents a genuine question of fact about why White Castle fired Thevenin and whether it was because of Thevenin's claim or complaints with the BWC.

{¶ 59} Accordingly, I would extend the majority's analysis beyond the procedural error and abuse of discretion outlined in *Murphy* and *Carter*, elucidating these other, substantive reasons why granting summary judgment in favor of White Castle was error, especially as to Thevenin's second assignment of error.

————————————